JAMES M'CUTCHEN AND OTHERS, APPELLANTS v. JAMES MAR-
SHALL AND OTHERS.

The case was submitted to the court on printed arguments, by Mr Benton, with whom were Mr Washington and Mr Yerger, for the appellants ; and Mr White, for the appellees.

232

Mr White, for the appellees, contended :

234

236

Mr Justice Thompson delivered the opinion of the Court.

This case comes up by appeal from the decree of the circuit court of the United States for the district of West Tennessee, by which the bill of the complainants was dismissed. The bill states, that Patrick M'Cutchen, a citizen of the state of Tennessee, departed this life some time in the year 1812, having shortly before, in the same year, made his last will and testament, which, after his death, had been duly proved and re-

corded. By which will, the testator among other things, bequeathed to his wife Hannah, during her natura! life, all his slaves, and provided, that they, specifying them by name, should, at the death of his wife, be liberated from slavery, and for ever and entirely set free ; except those that were not of age, or should not have arrived at the age of twenty-one years at the death of his wife. And those were to be subject to the control, and under the direction of his brother and brother-in-law, until they were of age ; at which period they were to be liberated. Samuel M'Cutchen, James Marshall, and his wife Hannah, were made executors, and all qualified. Patrick M'Cutchen died without issue. His widow had the possession of the slaves during her life. And James Marshall is the only surviving executor. The bill further states, that the complainants and the defendants, except James Marshall and two others, who are not made parties, because they reside out of the jurisdiction of the court, are the distributees and next of kin to the testator, and that the slaves and their increase are liable to be distributed to and among the complainants and the other next of kin ; and that the executor, James Marshall, refuses to distribute them, because the will directs their emancipation. And that he has actually presented a petition to the county court of Williamson, and procured the emancipation of some of them. And the bill charges, that the county court had no power to emancipate upon the application of an executor. That, by the laws of Tennessee, slaves cannot be set free by last will and testament, or by any directions therein. That if the law does authorise emancipation, that they are still slaves until the period for emancipation ; and that the increase born after the death of the testator, and before their mothers were actually set free, are slaves, and, as such, liable to be distributed. The bill then states the names of the several children, born after the death of the testator ; and prays an account of hire, and the distribution of all the slaves and their increase ; and an injunction to prevent the executor from proceeding to establish the freedom of the negroes, or removing them beyond the jurisdiction of the court, and also for general relief.

This statement of the allegations in the bill, thus far, is all that is necessary for the purpose of raising the material questions in the case, viz. the right of the owner of slaves in the

state of Tennessee, to manumit such slaves by his last will and testament. To this bill there is a demurrer by the executor Marshall, for want of parties, and also because there is no equity in the bill. The other defendants not having appeared, the bill is taken for confessed by them, and set for hearing. ex parte.

The demurrer admits the facts stated in the bill, and the question already mentioned is raised for the consideration of the court.

As a general proposition, it would seem a little extraordinary to contend, that the owner of property is not at liberty to renounce his right to it, either absolutely, or in any modified manner he may think proper. As between the owner and his slave, it would require the most explicit prohibition by law, to restrain this right. Considerations of policy, with respect to this species of property, may justify legislative regulation, as to the guards and checks under which such manumission shall take place; especially, so as to provide against the public's becoming chargeable for the maintenance of slaves so manumitted. It becomes necessary, therefore, to inquire what legislative provision has been made in the state of Tennessee on this subject; and it will be found, that the legislature has been gradually relaxing the restrictions upon the right of manumission. By the act of North Carolina of 1777, ch. 6, sect. 2, which was in force in Tennessee, it is declared, that no negro or mulatto shall hereafter be set free, except for meritorious services, to be adjudged of, and allowed by the county court. The act of Tennessee of 1801, ch. 27, sect. 1, modified the former law, and allowed the *owners* of slaves to petition the county court in all cases; setting forth the intention and motive for such emancipation, without any restriction as to meritorious services. And if the county court, upon examining the reasons set forth in the petition, shall be of opinion, that acceding to the same would be consistent with the interest and policy of the state, they are authorised to allow the manumission, under the provisions therein prescribed, to guard against the slave, so manumitted, becoming a public charge for maintenance.

This act does not, in terms, extend the right of application to the county court for the manumission of slaves, to any one, except the *owner* of the slaves. And it is argued, on the part

of the appellants, that no such application can be made by executors ; and that the declaration and direction in the will of Patrick M'Cutchen, in relation to the manumission of his slaves, amounts to no more than an expression of a wish on the part of the testator, that his slaves should be free ; but did not amount to a manumission, or confer any authority on the executor to consummate the manumission, by application to the county court. And the power of the county court to manumit on the application of the executor, is denied ; and their proceedings in the present case, alleged to be entirely void.

This question came under the consideration of the court of appeals in the state of Tennessee, in the case of Anne Hope v. Robert Johnson, executor of David Beattie, decided in January 1826. In that case Beattie, by his will, directed certain parts of his property to be sold, and the proceeds thereof to be laid out in lands in the Indiana Territory ; the right to which he vested in the negroes he then owned, naming them. "Each and all of whom I give their entire freedom, and the settling of them on the above lands, under the direction of my executor." The bill was filed by the next of kin and heir at law ; alleging, that the direction, with respect to the manumission of the slaves, and the purchase of the land, was void. The court decided that the devises and bequests in the bill, were legal and valid ; and that thereby the executor had full power and authority to procure the manumission of the slaves ; and to sell and dispose of the estate for their use, according to the directions in the will.

The court, in pronouncing their opinion, say, " that no particular mode of emancipation is specified, either by the act of 1777, or of 1801. As between the master and the slave, the intent and volition of the master to emancipate, may be made known by any species of instrument that will completely evince it ; and then nothing more is wanted but the assent of the state, expressed by its organ, the court ; which may show its determination by reporting on the petition, and certifying the same ; and by causing both the petition and the report to be filed among the records of the court. The mind and desire of the owner may be as well expressed by will, as by deed or any other instrument ; and when it is made known by his will, the

duty of his executor is, to use such legal means as may be effectual for the completion of his purpose."

This is a judicial interpretation by the highest court in the state, of one of its own statutes, which has always been held by this court as conclusive ; especially if such interpretation has not been called in question in its own tribunals and no case has been referred to, tending in any measure to shake this decision. And indeed, it is very much strengthened, if not absolutely confirmed, by the subsequent act of 1829, ch. 29, by which it is made the duty of an executor or administrator with the will annexed, where a testator had, by his will, directed any slaves to be set free, to petition the county court accordingly, and if the executor or administrator shall fail or refuse to do so, the slaves are authorised to file a bill for their freedom, under certain regulations pointed out by the statute (Digest. Ten. Laws 327, where all the laws are collected).

This act having been passed since the death of the testator in the case now before us, and since the manumission by the county court of Williamson county (as is presumed, though that time does not appear in the record), may not ratify and confirm the manumissions in the present case. Yet having been passed since the decision in the case of Hope v. Executor of Beattie, it may well be considered a legislative sanction of the construction which had been given by the court of appeals to the act of 1801. At all events, the decision in the case of Hope v. Executor of Beattie, must be considered as settling the construction of the act of 1801, and authorising the executor to petition the court for the manumission of the slaves, and justifying the proceedings of the court thereupon.

This construction of the act of 1801, puts at rest the claims of the appellants to all the slaves, except the children of the females, which were born after the death of the testator, and before the death of his widow, to whom all his slaves were bequeathed, during her natural life. And this class includes the children of Eliza and Cynthia only. For, with respect to Rose and her children, the testator declares, that upon the death of his wife, they shall be liberated from slavery, and for ever and entirely set free.

The question then arises, how the children of Eliza and Cynthia, born during the continuance of the life estate of the

widow, are to be considered. It is admitted to be a settled rule in the state of Tennessee, that the issue of a female slave follows the condition of the mother. If, therefore, Eliza and Cynthia were slaves when their children were born, it will follow as matter of course, that their children are slaves also. If this was an open question, it might be urged with some force that the condition of Eliza and Cynthia, during the life of the widow, was not that of absolute slavery; but was, by the will, converted into a modified servitude, to end upon the death of the widow, or on their arrival at the age of twenty-one years, should she die before that time. If the mothers were not absolute slaves, but held in the condition just mentioned, it would seem to follow, that their children would stand in the same condition, and be entitled to their freedom on their arrival at twenty-one years of age. But the course of decisions in the state of Tennessee, and some other states where slavery is tolerated, go very strongly, if not conclusively, to establish the principle, that females thus situated, are considered slaves. That it is only a conditional manumission, and that, until the contingency happens, upon which the freedom is to take effect, they remain, to all intents and purposes, absolute slaves. And we do not mean to disturb that principle. Cook's Reports 131, 381; 2 Randolph 228; 1 Haywood 234. The children of Eliza and Cynthia must, therefore, be considered slaves : and the question arises, whether the allegations in the bill are sufficient to call upon the executor to account for their wages, or to restrain him from taking any measures to establish their freedom.

The bill charges, that Pleasant and ten others, naming them, the children of Cynthia and Eliza (or perhaps Rose), were all born after the death of the said Patrick, and before the time arrived, when, by the directions of the said will, they were to be set free ; and that they are (if no others) to be distributed among the representatives of the said Patrick ; and prays, that the executor, James Marshall, may be compelled to distribute said slaves among the complainants, and account for their hire in the proportions to which they are entitled.

We think these allegations are too vague and uncertain to call upon the executor to account, in any manner, for those children.

In the first place, it is left entirely uncertain which of the persons named, are the children of Eliza or Cynthia. They are alleged to be the children of Eliza and Cynthia (or perhaps Rose) ; that is, perhaps the children of Rose. Now, if they, or any of them, are the children of Rose, such children are expressly manumitted by the will. In the next place, it is not alleged which of them are the children of Eliza, and which of Cynthia. And, by the will, a special and different disposition is made of these two. The testator directs, that Eliza shall be at the control and under the direction of his brother, Samuel M'Cutchen, until her arrival at the age of twenty-one years, and then to be set free. And, that Cynthia shall be at the control and under the direction of James Marshall, until she arrives at the age of twenty-one years, when she shall be liberated and for ever set free.

The bill does not charge the appellee with having the possession or control of these children ; or that he has received any wages for, or on account of them. Nor, under the various dispositions of these slaves, by the will of Patrick M'Cutchen, will the law charge the surviving executor with a breach or trust or neglect of duty, in not taking the charge and management of these children. If they are slaves, and the complainants have a right to them, they have an adequate remedy at law, to assist and enforce that right.

But it is contended, on the part of the appellee, that, independent of all other considerations, the appellants have no right to these slaves, or any part of them —for, by the codicil to the will, Elizabeth Larkins is made sole residuary legatee of the personal property which should remain at the death of the testator's wife ; and that slaves in Tennessee, being personal property, the executor holds them in trust for the residuary legatee, and not for the next of kin.

We do not, however, think this is the true construction of the codicil. It professes to explain one of the articles in the will, but not to make a different disposition of the property mentioned in that article. The article referred to, is the fifth, which in the will reads thus: " I will and bequeath to the said Patrick M'Cutchen, fourth son of my brother, Samuel M'Cutchen, and to Elizabeth Larkins, daughter of John Larkins, by his first wife, Margaret, jointly and equally, the land

on which I now live, with all its appurtenances, together with all the residue of my personal property (slaves excepted) which shall remain after payment of my just debts, &c., to take effect at the death of my beloved wife, &c.".

The codicil reads thus: "whereas some doubts may be entertained respecting the construction of the fifth article, and as I find upon review of the subject, I have not expressed my meaning with sufficient perspicuity, I declare this to be my will and meaning of the said fifth article ; Patrick M'Cutchen, named in that article, is to be the joint legatee with Elizabeth Larkins of the land only, and Elizabeth Larkins sole residuary legatee of the personal property which shall remain at the death of my wife."

The personal property referred to in the codicil, must mean the same personal property mentioned in the fifth article, otherwise the codicil would not be what it professes to be, explanatory of that article, but would be a different disposition of the property. The codicil must, therefore, be read with the same exception of the slaves as is contained in the fifth article. And that the testator did not intend to include any slaves in this codicil is very evident, because by the will, at the death of his wife, all his slaves were to be manumitted ; so that there could be no slaves to pass under the residuary clause in the will, or the codicil.

But upon the other grounds stated in this opinion, we think the bill contains no equity which entitles the appellants to relief. And the decree of the circuit court dismissing the bill, is accordingly affirmed.

This cause came on to be heard on the transcript of the record from the circuit court of the United States, for the district of West Tennessee, and was argued by counsel ; on consideration whereof, it is ordered, adjudged and decreed by this court, that the decree of the said circuit court in this cause be, and the same is hereby affirmed, with costs.