Brooke, J.
I entirely concur in the opinion delivered by the president for the whole court, that this case comes within the rule which governed the case of Maria & others v. Surbaugh. But as that rule has been sometimes questioned, I shall make some remarks upon it.
The rule is, that the issue shall follow the condition of the mother; a rule taken from the civil law, and adopted by one of our early statutes. The application of the rule in Maria & others v. Surbaugh was to the condition of the mother at the time the issue were born, and not to her prospective condition when she should arrive at the age of thirty-one years, at w'hich period she was to be free. At the birth of the issue she was a slave to all intents and purposes. That was the condition the issue were to follow. To have extended to-the issue the future condition of the mother would have been to place them in a condition the mother might never attain, as she might die before she arrived at the age of thirty-one, or she might be sold for the debts of the testator, and might never be free. *600 The application of the rule by the court to the actual condition of the mother at the birth of the issue avoided these contingencies, and was more humane as regarded the issue. There was no legal obligation on the master to take care of the issue, especially in cases in which the mother might be set free at an early age, and before he could be compensated by their labour for the expense of raising them. The properly in a slave did not give the right to the master to create a new status of slavery unknown to the law. I differ with justice Thompson in what he says on this subject in his opinion in the case of M’Cutchen & others v. Marshall & others, 8 Peters 220. in which case the rule and application of it in Maria & others v. Surbaugh was followed. He says, that as a general proposition, it would seem a little extraordinary to contend that the owner of property is not at liberty to renounce his right to it, either absolutely or in a modified manner, as he may think proper: that as between the owner and his slave, it would require the most explicit prohibition by law. All this is undeniable as regards his property: but his slave would still be a slave, unless he was authorized by law to manumit him, by renouncing all property in him. I think it one of the highest acts of sovereignty to exalt a slave into the rank of a freeman, as I have before said in one of these cases. It is true that at an early period there was a law prohibiting persons to emancipate their slaves. But it is not to be inferred that the right existed before. As soon as the mischief was felt, it was corrected by law. That maxim of the law, sic ntere tuo ut alienum non Icedas, forbade it, until afterwards the legislature pointed out the mode of emancipation; which unfortunately has not been pursued according to its terms, or the cases of prospective emancipation would never have existed.