Mr. Justice Clayton
delivered the opinion of the court.
The contest in this case grows out of the same will which was the subject of controversy in the case of James B. Ross et al. v. Vertner et al. 5 How. 305. The bill was filed, in that case, by the heirs and distributees of the testator, against his executors, to prevent the execution of the trusts of the will; in the present case it is filed by the American Colonization Society, as a trustee, against the executors to compel the execution of those trusts, and to carry out the provisions.
It may aid our conclusion on this occasion, to ascertain precisely what was the controversy in the former suit, and what was determined by it. That “bill sets out the will, and avers that its provisions and trusts in relation to the transportation of the slaves to the coast of Africa, are in violation of the policy of this state, and in fraud of the statute on the subject of manumission, and are therefore illegal and void. That the provision for their support and maintenance, when carried to Africa, is illegal and void, because the trust is for an illegal purpose. And that the contingent bequest for the establishment of a seminary of learning is void, because against the policy of the state of Mississippi, and because the American Colonization Society has no capacity to take for such a purpose. The bill concludes with a prayer, that the estate embraced in said illegal and void trusts, be decreed to complainants, as sole heirs at law.”
There was a general demurrer to the bill. The case was elaborately argued; and the several positions assumed in the bill were discussed with much zeal. It was contended that if the bequests and devises of the will were void, “ the executors were trustees for the heirs, and could not dispose of the estate *693 for charities or other objects to be selected, either by the executors or the court.” The court decided that the trust created by the will was valid.
To the present bill, there is likewise a general demurrer; and the first ground assumed in support of it is, that the chancery court has no jurisdiction, because “it is purely a matter of administration cognizable in the probate court.”
In Carmichael v. Browder, (3 How. 255,) the leading case upon this subject, the court say, “ The broad proposition that an administrator cannot, for any purpose, resort to a court of equity, or that he cannot, in that capacity, be there proceeded against for any contingency, was never intended to be asserted, nor do the opinions warrant any such conclusion. We do not mean to decide, that there are not cases arising in the course of administration, which may be proper for the interposition of a court of equity. The same rule which is applicable to other courts of law, will no doubt apply to this. If it be wholly incompetent to give relief, and the party have not, by his own laches, lost his remedy, then it might be a proper case for equity jurisdiction.”
It is thus plain, that there may be cases growing out of wills, which are the proper subjects of equitable jurisdiction. Of this class must be many trusts. They are creatures of courts of equity; and the abuses of trusts and confidences are wholly without any cognizance at the common law, and beyond the reach of legal process. See 1 Story’s Eq. 28. Trusts may arise under a will; if they be of a character which requires equitable interposition, the fact that they were created by a will cannot exclude the jurisdiction of equity. It may not be easy to draw a line, which in all such cases separates the jurisdiction of the two courts. The power of the probate court to give full and adequate relief, must always be a material circumstance. We think here the full measure of relief could only be attained in equity, and therefore that the court had j urisdiction.
It is also insisted in argument that these bequests are void, first because they are to slaves, and that slaves have no capacity *694 to take — next that they are void because the trustee, the American Colonization Society, has no capacity to take, and lastly, that being void, a court of chancery cannot enforce them, as charities.
The first of these objections is directly opposed to the decision of this court in the former case. It is also opposed to the case of Leach v. Cooley, 6 S. & M. 93; in which it was holden, that “the right of freedom under the will is inchoate, and becomes complete when the subjects of it are removed. The bequest to the slaves is not void for want of capacity in the legatees to take.” Precisely the same principle is recognized in Henry et al. v. Hogan, 4 Hum. 208; a case in which the slaves were obliged to go to Liberia, to obtain the benefit of the bequest of their freedom, and in which the property appropriated to raise a fund for the payment of their expenses, was held tobe properly applicable to that purpose. See also Hope v. Johnson, 2 Yerg. 123; 8 Pet. 239. In Virginia such dispositions have been supported. Elder v. Elder's Ex. 4 Leigh, 252; Dunn v. Ames, 1 Leigh, 465. So in South Carolina, 2 Hill’s Ch. R. 305.
The capacity of the Colonization Society to 'take, is of necessity, also directly affirmed by the former decision. On no other principle, could the trust have been pronounced valid. A bequest to this very society was sustained in Burbank v. Whitney, 24 Pick.; so in Bartlett v. Nye, 4 Met. 378, in which a bequest to unincorporated societies was held valid. But we need not go the length of this latter case. This objection is made upon demurrer to the bill, and it seems confined and narrowed down to the point, that the bill does not aver that the society was incorporated, at the death of the testator. The bill states that the complainants are duly and legally incorporated; that they are willing to accept and appropriate the funds, as provided for in the will; the object of the society by their charter being in accordance with the provisions of said will and in furtherance thereof. It further alleges that by the decisions of the courts, the said will and its provisions were fully established, and the rights of complainants to said slaves *695 and estate, in trust as bequeathed in said will and for the purposes therein contained, were fully confirmed.” Taking all these statements together, we see no room for this objection. If the society be incorporated; if its purposes be in' accordance with this will; if the provisions of the will have been theretofore established, and the rights of the complainants fully confirmed, all of which are admitted by the demurrer, then it was properly disallowed.
It is nest contended that if these devises are invalid, either for want of capacity to take on the part of the donees, or of the trustees; then equity cannot enforce them as charities. To this we reply, that if the trusts created by this will be valid, then there is no room and no necessity for the application of the doctrine of charities. It is only where the bequest or devise is too vague or indefinite, for those intended to be benefited, to claim any interest under them, that the doctrine as to charities arises. It is clearly settled that “ definite charities are trusts, which equity will execute by virtue of its ordinary jurisdiction.” Gallego's Ex’rs v. Lambert, 3 Leigh; 3 Peters, 100. Charities begin where definite trusts end. It is therefore wholly unnecessary for us to inquire whether the statute 43 Elizabeth is in force- in this state, and whether the court of chancery has any jurisdiction over charities to compel their performance, apart from and independent of that statute. It may not be out of place, however, to remark, as this point was urged in argument with great zeal, that in the late case of Vidal v. Girard’s Ex’rs, (2 How. S. C. R.) that court modified very much, if it did not overrule, the case of Hart’s Ex’rs v. Baptist Association, 4 Wheat. 1. The court there said, “ that new sources of information, recently developed, established conclusively, that long before that statute, courts of chancery exercised jurisdiction over charities, not only where they were indefinite in their nature, but where either no trustees were appointed or where they were not competent to take.” The opinion was delivered by Judge Story, and must be regarded also as an abandonment of the opinion upon this subject, expressed in his Commentaries upon *696 Equity. But in this case it is matter of speculation rather than of practical use, because we see no reason to change the former opinion, that these trusts, so far as it is necessary now to determine them, are valid.
The other.counsel for the appellant does not controvert the case of Ross v. Vertner, and admits that decision to be conclusive so far as it goes. He says that was a proceeding to prevent the executors from acting; this is an attempt to compel them to act. The court then very properly declined to interfere. The question now is, according to this argument, not whether this is a valid trust which the executor may execute, but whether it is one which the complainants can compel him to execute. If the trust be a valid one, have the complainants any interest?
To this we reply, “ that if a bequest be accompanied by words expressing a command, recommendation, entreaty or hope on the part of the testator, that the property will be disposed of in favor of another, a trust will be created; first, if the words on the whole are sufficiently certain; second, if the subject be sufficiently certain ; and third, if the object be also sufficiently certain.” Hill on Trustees, 71. All these requisites concurred in the present instance. The- intention of the testator here cannot be mistaken, and that intention must be carried into effect if it be not opposed to the law of the land. Inglis v. S. S. Harbor, 3 Peters, 99. His request is imperative. The subject is certain beyond doubt — his slaves — and the object equally so — their liberation. The provisions of the will constitute both the executors and the colonization society trustees. Where the duty of the one ceases,- the other commences. It is the duty of the executors to deliver the slaves to the society for the purposes of the will; and it is the duty of the society to carry out those purposes. If a part of the trustees will not discharge their duty, and interpose obstacles to the execution of the trust by the others, clearly a court of equity may enforce the performance.
We need not now decide whether any remedy exists on the part of the slaves, if there had been no trustee under the will. That is entirely distinct from the right of the trustee to come *697 into a court of equity to enforce the trust. It is in cases where there is no one capable of enforcing the trust, that in England the attorney-general is made a party. It is one of the rules of equity not to permit a valid trust to be defeated for want of a trustee. We need not decide this, but we take occasion to say, that in several of the states it has been held that the mere intention of the testator to emancipate, conferred a right to freedom, which, though it cannot be asserted in a court of law, may be enforced in a court of equity. Dempsey v. Lawrence, Gilm. 333: 1 Leigh’s R. 471; Charles v. French, 6 J. J. Marsh. 333; Throckmorton v. Jenny, 5 Monr. 585; 1 Ib. 130; Frazier v. Frazier, 2 Hill’s Ch. R. 317; Williams v. Maunsell, 1 Rob. Va. Rep. 647.
It is again insisted that this society is prohibited by its charter from taking or holding property except for one purpose, that “of colonizing with their own consent upon the coast of Africa, the free people of color residing in the United States.” We do not give to the charter the same restricted construction that the counsel do. It is true the charter confers no right to transport slaves to Africa, there to be colonized. But the slaves of to day may be free to morrow, and when free, may with their own consent be so transported. In the present instance these slaves are not now free, but they have an inchoate right to freedom. As soon as they are taken beyond the limits of this state that right is so far consummated, that by the terms of the charter they may be transported and colonized. In this there is no violation either of the laws of this state or of the charter; and such provisions have been repeatedly carried into effect by the society without objection.
Moreover, according to the authorities, this question can only arise between the corporation and the state which granted the charter. On this point the supreme court of the United States says: “ If the trust be repugnant to, or inconsistent with the proper purposes for which the corporation was created, that may furnish a ground why it may not be compellable to execute it; but it will furnish no ground to declare the trust itself void, if otherwise unexceptionable.” “ If the trusts were in *698 themselves valid in point of law, it is plain that neither the heirs of the testator, nor any other private person, can have right to inquire into or contest the right of the corporation ; it could only be done by the state.” 2 How. S. C. R. 189, — 191.
Great reliance has been placed in argument on an act passed in 1842, which gives twelve months for the removal of slaves theretofore liberated, and declares the bequest of freedom to be void if they do not so remove.
It will be borne in mind that before the passage of this law, the provisions of this will had been declared valid by the judgment of this court, and the slaves declared entitled to an inchoate right of freedom, which would be perfect by their removal from the state. The bill shows the use of every means in the power of the complainants or of those for whom they act, to comply with this law. This suit was brought within the twelve months, to compel the executor to comply with the will, and to deliver them up for removal. If the statute have taken away their right to freedom it has been against their best efforts, and those of their trustees. It has been by a breach of trust and perversion of power. Can the end be attained by such means 1 This court has decided, upon very high authority, in reference to the Choctaw Indians, that if they have been prevented by force from complying with the condition imposed by the treaty, of five years continued residence upon their reservations, it will be regarded as if they had complied. Doe v. Coleman, 4 S. & M. 46. Rights acquired by fraud cannot be sustained. These objects of the testator’s solicitude and bounty have been detained here against their will, against the will of the society, and that of all the executors except one. If the act of the legislature stood free from any objection, we should be constrained to say, this was such a fraud upon the part of the executor so acting, that neither he nor any one claiming in virtue of his acts acquired any right. We need not determine the validity of the law. It has nothing to do with the case; the fraud of the party has placed him beyond its pale. How far it is constitutional might be a grave question, but that we do not now touch.
The order of the chancellor is affirmed.