PROVIDENT INSTITUTION v. MASSACHUSETTS.

1. The preceding case (*Society for Savings* v. *Coite*) affirmed and declared to be applicable to this case.
2. Under the constitution and laws of Massachusetts, as interpreted by its highest court prior to the present case, in two cases not involving any question under the Judiciary Act, and by long usage, a statute which enacts that every institution for saving incorporated under the laws of that commonwealth, shall pay to the commonwealth "a tax on ac-count of its depositors" of a certain percentage "*on the amount of its de-posits*, to be assessed, one-half of said annual tax *on the average amount* of its deposits for the six months preceding the 1st of May, and the aver-age amount of its deposits for the six months preceding the 1st of No-vember," is to be regarded as a franchise tax, not as a tax on property, and is valid. Nor is there anything inconsistent with this view in the decisions of this court

---

* Savings Bank v. Collector, 3 Wallace, 514.

8. Accordingly, a savings institution in Massachusetts having a portion of its deposits invested in Federal securities declared by the act of Congress authorizing their issue to be exempt from taxation under State authority, is liable under the above statute to a tax on account of such deposits as on account of others.

THIS case, which came here on writ of error to the Supreme Court of Massachusetts, involved as a general matter the same question as the case just preceding; to wit, the taxation by State legislatures of Federal securities held by savings banks created by them; the difference between the two cases being that the question in the former case arose under a statute of Connecticut having one form of language, and in this case arose under a statute of Massachusetts having another form, more or less different.

The present case was thus:

A statute of Massachusetts of 1862 (entitled "An act to levy taxes on certain insurance companies and *on depositors* in savings banks") provides by its fourth section that every institution for savings incorporated under the laws of that commonwealth, should pay to the commonwealth "*a tax on account of its depositors* of one-half of one per cent. per annum* *on the amount of its deposits,* to be *assessed,* one-half of said annual tax *on the average amount of its deposits* for the six months preceding the first day of May, and the other, *on the average amount of its deposits* for the six months preceding the first day of November."

The act by its twelfth section exempted "*all property taxed*" under the above section from taxation for the current year in which the tax was paid; and relieved savings banks from making return of deposits in accordance with the provisions of previous statutes.

With this statute in existence, the Provident Institution for Savings, a corporation having no property except its deposits and the property in which they were invested, and *authorized by the general statute of Massachusetts* to receive money on deposit for the use and benefit of the depositors,

* By Act of 1863, increased to *three-fourths* of one per cent. per annum.

and to *invest its deposits in securities of the United States*, had as its average amount of the deposits for the six months preceding the first day of May, 1865, $8,047,652.19, of which $1,327,000 stood invested in public funds of the United States, exempt by law of the United States from taxation under State authority. It paid all taxes asked of it except on the portion which stood thus invested; upon that it declined to pay a tax. On suit brought by the commonwealth to recover the same, the Supreme Judicial Court of that State, regarding the taxing as one on franchise and not on property, and therefore lawful, gave judgment for the commonwealth.

On error here, the question was the correctness of this judgment; in other words, whether the State by force of the statutes could exact the tax on that portion of the society's deposits which was invested in the public funds of the United States?

*Messrs. Bonney and Bartlett, for the plaintiff in error :*

I. It may be stated as a fact, that up to the time of the statute of 1862, the taxes on deposits in savings banks were assessed directly to the depositors. But as the Supreme Court of the State has declared,* a large portion of such deposits being under $500 in amount, and for that reason not included in the returns to assessors, required by general statute, usually escaped taxation.

The purpose, then, of the act of 1862 was to change the form of taxation of the property of depositors, so as to prevent its escaping complete taxation when assessed, as it previously had been, in the annual valuation of the property of individuals.

1. The title of the act declares it to be " An act to levy taxes . . . . on *depositors* in savings banks."

2. The act itself, in one section, declares that every savings bank shall pay to the commonwealth an annual tax, "*on account of its depositors,* of one and one-half per cent.," &c. In

---

* Bigelow, C. J., 5 Allen, 437.

another, that "*all property*" thus taxed "shall be otherwise exempt from taxation for the current year."

3. The Supreme Court of Massachusetts has settled, in a case *which involved no question as to the taxation of United States securities*, that by the true construction of this act *it imposed the new tax solely on the corporation and not upon the* "money in its hands belonging to *depositors*," and this concludes that question.*

Since the design was to make the tax of that property more complete, and more like the mode of taxing other like property, the inference is cogent that the substituted tax was also *on property*, and not a *bonus* for a franchise, if indeed that distinction is of any importance, which we assert that it is not.

But whatever may have been the purpose, the act shows that the assessment is direct upon the property of the corporation.

II. The laws of the United States provide that securities of the United States shall be exempt from taxation by or under State authority.

What avails it to the citizen who has lent his money to the government that the constitution or laws of the United States declare its public stocks exempt from State taxation, if a State may, under the pretence of shifting taxation from property to franchise, impose it as an excise or duty on the privilege he enjoys of pursuing his avocation, acquiring or holding property, or other "franchise,"—to be "estimated," "apportioned" or "graduated" by the amount of all the property he possesses, however invested?

That State has virtually said: "Savings banks hold all their deposits in strict trust for their depositors; they must invest them only in certain designated property; in the more hazardous, only in limited amounts. But there is one class —the public funds of the United States, an especially convenient and safe investment—by the laws and decisions of the United States exempt from State taxation in their hands,

---

* Commonwealth *v.* Savings Bank, 5 Allen, 432.

and therefore especially inviting; in these they may invest without limit, all their assets, if they choose."*

The savings banks have no sooner availed themselves of this privilege, and invested largely in this property, than the State demands of them a tax of three-fourths of one per cent. per annum on *all.* their deposits!

What matters it to either the savings banks or the United States what the *theory* of the tax is; whether it be on franchise or deposits? The one knows that if it had not the deposits it would not have the tax. The other that they can borrow money no better under one mode of taxation than under the other.

This new device of substantially taxing property, and declaring it to be a tax upon a franchise, requires to be carefully watched, or the government will be largely crippled in its means of borrowing money. Technically, a franchise is a special right conferred by government on designated individuals, but the same doctrine is applicable to all special pursuits of the citizens. Massachusetts, accordingly, taxes for what is called faculty (which is a franchise or right held under general laws), numerous classes of persons. If, under the guise of taxing the exercise of the various pursuits of life, all property used or acquired in those pursuits is declared the measure of its enjoyment, and the rate of taxation governed by it, it is clear that the exemption from taxation attached by law to United States securities is futile.

*Mr. Allen, Attorney-General of Massachusetts, contra:*

The general proposition to be maintained on the part of the commonwealth of Massachusetts is, that the present is in the nature of an excise laid upon the franchises of savings institutions, and not upon their property; and that, this being so, no abatement should be made by reason of government securities held by them.

1. In Massachusetts it is, and long has been, customary to

---

* General Statutes, chap. 57, §§ 141–145.

tax or lay an excise upon franchises, independently of property. The authority to do this is derived from that clause of the constitution which authorizes the legislature "to impose and levy reasonable duties and excises upon any produce, goods, wares, merchandise and commodities whatsoever, brought into, produced, manufactured, or being within the same."*

The term "commodities" includes the privilege of carrying on any kind of business. In early times, under this clause of the constitution, excises upon innholders, the recording of deeds, the commissions of numerous public officers, and the admission of attorneys, were levied and collected, as excises upon "commodities." †

Now the tax laid upon a corporation in Massachusetts is ordinarily an excise or duty upon the privilege of doing business in a corporate form; and this, as is said in *Portland Bank* v. *Apthorp*,‡ decided in 1815, affirmed A.D. 1862 in *Commonwealth* v. *People's Five Cents Savings Bank*,§ has always been considered as an excise on a "commodity," within the meaning of the constitution.

This system is quite different from that of some other States. In New York, "all taxation is upon property;" property, exclusive of franchises. In *Bank Tax Case*,‖ it is expressly stated that the tax in New York is not a franchise tax, but a property tax. And in that case a valuation of the property was made, and not a valuation of the franchise.

Considered as a property tax, confessedly the present tax could not be supported even under the constitution of Massachusetts. This has been twice adjudged in Massachusetts, to wit, in *Commonwealth* v. *People's Five Cents Savings Bank*,¶ and in *Commonwealth* v. *Provident Institution for Savings*.** The doctrine has been recognized in several other cases. The reason is, that it is not proportional. No question was raised concerning the effect of holding government bonds in *Com-*

---

* Constitution of Massachusetts, pt. 2, c. 1, § 1, Art. 4.
† Massachusetts Stat., 1795, c. 80.　　‡ 12 Massachusetts, 252.
§ 5 Allen, 431.　　‖ 2 Wallace, 209.
¶ 5 Allen, 428.　　** 12 Id. 312.

monwealth v. *People's Five Cents Savings Bank.* It was simply a question under the State constitution. That decision, arrived at under those circumstances, and repeatedly recognized since, settles the law for Massachusetts, except so far as it may be modified by the decision of this court, in reference to government securities. This consideration furnishes a strong argument to show that the legislature did not design the tax to be a property tax. It intended to act within the constitution, and a construction which is consistent with the constitution should be given to their acts, if possible. The practical question for this court to determine now is, whether, after such a decision, made under such circumstances, this court will feel at liberty to inquire into its correctness after the lapse of years, simply because a new fact, now for the first time existing, and not affecting the principle, gives this court the power to do so. Such a course would virtually do away with the rule that the construction given by the highest State court to the State constitution and statutes, shall be binding upon this court.

2. But this tax is not a property tax. It does not depend on the amount of property held by the savings institution, but it depends upon its capacity to exercise the privileges conferred by the charter. It does not depend on any valuation of property, but on the average amount which has stood to the credit of the depositors.

The average amount of deposits, and the amount of property owned by the institution, may be widely apart.

If not a property tax, this must be considered as a franchise tax.

If a franchise tax, no abatement should be made on the ground that the corporation may hold government securities. The tax is laid upon the capacity, or power, or privilege, or franchise to make investments; this capacity is measured by the average amount of deposits received; but it is wholly immaterial whether the savings institution exercises this privilege or not. Not being laid upon the property at all, it matters not whether the bank held Federal securities or not.

*Reply:*

Neither the *Portland Bank* v. *Apthorp* nor the *Commonwealth* v. *People's Five Cents Savings Bank* touches or disposes of any other question than these, viz. :

1. That the tax in both of them was not a tax under the clause ʼof the State constitution giving authority to the legislature " to impose and levy *proportionate* and *reasonable* assessments, rates, and taxes *upon all the inhabitants of, and persons resident and estates lying within, the commonwealth*," because those taxes must be proportionate upon all persons and property within the State.

2. That the only other power of taxation under the State constitution was to be found in these words : " To impose and levy *reasonable duties and excises* upon any *produce, goods, wares,* and *merchandise* and *commodities* whatsoever, *brought into, produced, manufactured,* or *being* within the State."

In the discussion of the grounds on which the tax is held to be a corporate charge, and not one on depositors, the court state that it is "the extent to which the corporation has exercised the franchise during a certain period that is made the basis on which to estimate the sum to be paid for the enjoyment of the privilege," and that it is a reasonable basis. But they were not called on to, and did not decide whether this measure of enjoyment, viz., "the amount of its deposits," was a measure fixed by property.

Nor did they decide in either of those cases that a franchise tax thus authorized was not, or could not be, either in substance or form, a tax on, or measured by, the property of the corporations.

As, therefore, until the decision of the present cause, there had been no adjudication that the tax was not upon the property of the corporation, but merely that it was not a tax on depositors, we turn again to the act, and finding that these same deposits had, prior to the act, been taxed as *property* to the depositors, and that the act merely shifts the tax to the corporation, and exempts depositors from tax on it; and add to this the language and scope of the act which lays a *tax* (not "a duty" or "excise") on account of

depositors, on the amount of deposits,—we submit that the tax must be deemed as still a tax on property.

The suggestion of opposing counsel that the tax may be measured not by property *in esse*, but by something that may have been lost or passed away, assumes that all taxation is indispensably restricted to property in immediate enjoyment when the tax is laid. It is not obvious why it may not be legally based upon property enjoyed and consumed during the year. It certainly is or may be so as to income, and yet such tax would be measured by property.

In the *Bank Tax Case*,* the tax was like the one upon this corporation. It was upon "à valuation equal to the amount of the capital stock, paid in, or secured to be paid in, and their surplus earnings." There was no appraisement of the true value of the capital stock, which might have been diminished by losses, leaving no surplus earnings, but it was held to be a tax fixed and measured by an approximate valuation. The arguments by which the tax was attempted to be sustained were in all respects the same that are urged in this case, viz., that it was a tax on a franchise and not on property; but they failed, and the reasoning of the court as to the character of the tax is full and conclusive.

But, if this court should follow the opinion of the State court, and hold the tax to be one founded on the consideration of the grant of a charter, it will not advance the cause. The question still remains, Is the tax, whatever its consideration, a tax on property? and we submit—

1. That there is nothing in the constitution or laws of the State that prevents an annual tax for a franchise from being laid, so to speak, directly on and measured by the property of the corporation ; and this excludes the suggestion that the tax in question must be deemed not to have been intended to be laid on property, since the power to so levy it is, we submit, unquestionable. The clause in the constitution which authorizes a tax on a franchise as a "commodity," embraces "any goods, wares, and merchandise," &c. A tax

* 2 Wallace, 201.

on them must be in the popular sense a tax on property. Why may it not be so, if on a franchise?

2. That if the true purpose and construction of the act were as thus contended, yet it is not perceived why, if a tax be upon property, or measured by the amount of property, it is material whether the liability to such taxation rests upon, or is in consideration of, a grant of corporate powers. If this act had distinctly assessed a tax upon a valuation of the entire property of the appellants, and declared it to. be a tax levied in consideration of the grant of corporate powers, would that not be a tax upon its property? and if among that property United States securities were found, would not they be exempted?

3. Rightly speaking, no tax is *upon* property or *upon* a franchise. It is upon persons or parties holding and enjoying such property or franchise, and in consideration of such holding and enjoyment.

4. If it be asked, Can no tax be legally laid on a special franchise granted by the State? we answer, that doubtless a bonus may be reserved and fixed at the time, and by the terms of the grant, or a tax may be laid fairly, governed by the emoluments or benefits derived, or that might be derived, from the enjoyment of the privilege. But a tax under this guise, on or measured by all the capital employed in the use of this privilege, is a tax on property.

II. There remains the broad ground on which the case may and ought perhaps to be put, viz., that under *no form* can the Federal securities be practically rendered by State legislation less valuable.*

Mr. Justice CLIFFORD delivered the opinion of the court.

Institutions for savings incorporated under the laws of Massachusetts, are required by law to pay to the treasurer of the commonwealth a tax on account of their depositors of three-fourths of one per cent. per annum on the amount of their deposits. Half the amount of such annual tax is to

---

* The reader desirous to see further argument on both sides of this question, can refer to the arguments in the preceding case, pp. 595–602.

be assessed on the average amount of such deposits for the six months preceding the first day of May, and the other half on the average amount of their deposits for the six months preceding the first day of November in each year. Semi-annual returns are required to be made by the corporation, specifying the amount of their deposits on those days, and the average amount for the six months next preceding; and the provision is, that the property taxed under that section, or under the section preceding it, " shall be otherwise exempt from taxation for the current year in which the tax is paid."*

Average amount of deposits in the institution standing to the credit of depositors for the six months preceding the first day of May, 1865, was $8,047,652.19, of which $1,327,000 were invested in the public funds of the United States. Due returns were made by the corporation defendants, and they paid the percentage on the whole amount of the deposits not invested in the national public funds.

Corporations neglecting to pay such a tax are made liable, by the eleventh section of the act, for the amount withheld, with costs and interest, in an action of assumpsit in the name of the commonwealth. Proceedings were accordingly commenced, and the parties submitted the controversy to the State court upon an agreed statement of facts, which is exhibited in the record. Judgment was rendered for the plaintiff for the balance of the tax, with costs and interest, and the defendants sued out a writ of error under the twenty-fifth section of the Judiciary Act, and removed the cause into this court.

By their charter the corporation defendants were empow ered to receive deposits from any person or persons disposed to become depositors, and to use and improve the same to the best advantage, but they were required to apply and divide the income or profit thereof, with reasonable deductions, among the persons making the deposits.†

---

* Sessions Laws, 1862, pp. 198–9 ; Ibid. 1863, p. 479.

† 5 Special Laws, 172.

Such corporations may receive on deposit, for the use and benefit of the depositors, all sums of money offered for that purpose, but recent legislation provides that they shall not hold of one depositor, other than a religious or charitable corporation, more than one thousand dollars at the same time. They may invest such deposits in first mortgages of real estate, or in the stock of the State banks, or in the public funds of the State or of certain other States, or of the United States, or the deposits may be loaned to any city, county or town in the State, or on notes with a pledge of any of those securities as collateral.*

I. Most of the questions involved in this record were very carefully considered in the case *The Society for Savings* v. *Coite*, argued at the present term,† and received the conclusive determination of the court. Extended argument in support of that judgment is unnecessary, as we are entirely satisfied with our conclusions and with the reasons assigned therefor at the time the judgment was rendered.

Substance of the points determined in that case, so far as they are applicable in this controversy, may be stated as follows: (1) That the securities issued by the United States declared by act of Congress to be exempt from taxation, cannot be taxed by the States for any purpose. (2) That power to borrow money on the credit of the United States is conferred upon Congress, and that inasmuch as the Constitution and the laws of Congress passed in pursuance thereof are made the supreme law of the land, it follows that the action of Congress in the exercise of that power is shielded from every species of unfriendly State legislation. (3) That the States cannot tax the instruments of the Federal government nor the means employed by Congress to carry into effect the powers conferred in the Federal Constitution, although their authority is undeniable to tax all subjects over which the sovereign power of the State extends. (4) That State laws requiring savings institutions authorized by law

---

* General Statutes, 317.          † The preceding case.—Rep.

to receive deposits, but without authority to issue bills and having no capital stock, to pay annually into the State treasury a sum equal to three-fourths of one per cent. on the total amount of their deposits on a given day, in lieu of all other taxes, are properly regarded as imposing a franchise tax, and not a tax on property. (5) That the privileges and franchises of a private corporation, unless exempted in terms, which amount to a contract, are as much the legitimate subject of taxation as any other property of the citizen which enjoys the protection and is within the control of the sovereign power of the State. (6) That corporate franchises are legal estates, and not mere naked powers, but powers coupled with an interest which vest in the corporation by virtue of their charter. (7) That private corporations and all trades and avocations by which the citizens acquire a livelihood may be taxed by the State for the support of the State government. (8) That such authority resides in the States independent of the Federal government, and that it is wholly unaffected by the fact that the party, whether corporation or individual, has or has not made investments in Federal securities. (9) That the power rests in the discretion of the legislature to decide whether the sum to be levied shall be a fixed one, and, if not, to determine in what manner and by what means the amount shall be determined.

Those several propositions, except perhaps the fourth, are as applicable to the present case as to that in which they were announced, and it is clear that nothing is left in this record for decision save the question whether the tax imposed in this case is to be regarded as a tax on property or a tax on the privileges and franchises of the corporation.

Taxation in that State is regulated to a certain extent by the constitution of the State, adopted in 1780, and which is still in force, and in that respect without alteration. Full power and authority are therein given to the legislature "to impose and levy proportional and reasonable assessments, rates, and taxes upon all the inhabitants of, and persons resident, and estates lying within the said commonwealth, and also to impose and levy reasonable duties and excises

upon any produce, goods, wares, merchandise, and com modities whatsoever, brought into, produced, manufactured, or being within the same." First judicial exposition of that clause was given in the year 1815, in a case which was fully considered, and of much importance, and which remains un-questioned to the present time.[*]

Incorporated banks were required by the act of the legis-- lature, passed June 23d, 1812, to pay annually to the treas-urer of the State, for the use of the same, a tax of one-half of one per cent. on the amount of the original stock issued to the stockholders.[†] Due assessment of the tax was made, and the bank failing to pay the amount, it was collected by warrant of distress, and the bank instituted an action of trespass against the treasurer of the State, who issued the warrant.

Several objections were taken to the assessment, which it becomes important to notice: (1) That the tax was illegal, because it was not equal and proportional, as required by the constitution. (2) That the bank could not be made liable to the tax, because their charter was granted long be-fore the statute imposing the tax was passed. (3) That the legislature could not select any specific property as the sub-ject of taxation, and assess the owner for it separately and distinctly from his equal and proportional share of such taxes as were required of all other inhabitants.

Views of the court were, however, that the law was per-fectly consistent with the constitution, with the rights of the complaining corporation, and with the practice of the State under the constitution, from the time of its adoption.

Although such was the unanimous conclusion of the court in the case, still they all distinctly held that, under the first branch of the power conferred, the requisition upon the bank could not be justified, because the condition annexed to the power to impose and levy assessments, rates, and taxes, as given in the constitution, is that the taxes shall be

---

[*] Portland Bank *v.* Apthorp, 12 Massachusetts, 252.

[†] 4 Massachusetts Laws, 317.

proportional "upon all the inhabitants of, persons resident, and estates lying within the commonwealth;" that the due exercise of that power requires an estimate, or valuation, of all the property in the State, and that the assessment upon each individual shall be according to his proportion of that property.

Express determination of the court was, that the legislature could not select any company or individual of any specific article of property and assess them by themselves, as that would be a violation of that provision of the constitution which requires that the taxes shall be proportional. They also held that the object of the charter was to enable the corporation to conduct their business as an individual, to make contracts, and enforce them as such, avoiding the inconvenience of a copartnership; that inasmuch as there was no express waiver in the charter of the power to impose a duty or excise, it could not be held that the legislature had relinquished that right, and that a tax upon all the banks in the State was justifiable under the second branch of that clause.

Operation and effect of the term excise, as used in that clause, are limited to "any produce, goods, wares, merchandise, and commodities," but the court regarded the latter word as, perhaps, embracing everything which may be the subject of taxation, and stated that it had been applied by the legislature from the earliest practice under the constitution, as authorizing a tax upon the privilege of pursuing particular branches of business and employment. They defined the term to mean "convenience, privilege, profit, and gains," and affirmed that the legislature, by virtue of it, had exercised the right for thirty years, without complaint, of exacting annually a sum of money from auctioneers, attorneys, tavern-keepers, and retailers of spirituous liquors. Money exacted in such cases, say the court, is not a proportional tax, nor is it an excise or duty upon any produce, goods, wares, or merchandise, but "it is a commodity, convenience, and privilege which the legislature, by contemporaneous construction of the constitution, assumed

a right to sell at a reasonable price, and by parity of reason, it may impose the same conditions upon every other employment or handicraft."

Regarded merely as a question of power, it is undoubtedly true, as stated by the court in that case, that the legislature might as well exact a fee or tribute from brokers, factors, or commission merchants, for the privilege of transacting their business, as from auctioneers, inn-holders, retailers, or attorneys, as every citizen has as much right to exercise either of those employments free of tribute, as the cultivator of the soil or the mechanic has to pursue their particular callings.

Taken in any point of view the decision in that case is decisive of the question under consideration, unless it be assumed that the whole tax was illegal and void as directly contrary to the State constitution. Such a conclusion can hardly be admitted, in view of the fact that the rule of construction adopted in that case has prevailed under the highest judicial sanction of the State for more than fifty years. Assessors and people, as well as the bench and the bar, are familiar with that construction of the constitution which had prevailed in practice for more than thirty years when the rule was announced by the courts. Indeed, usage was one of the strong arguments employed by the Supreme Court of the State in support of their conclusion at the time the prevailing rule of construction first received judicial sanction.

Usage of successive legislatures, said the court, from the time the government began, when its powers as well as the rights of the citizen were well understood, and when there was a general disposition to keep all the departments within their prescribed sphere, down to the present time, furnishes strong grounds for explanation of parts of the constitution which are obscure or not perfectly explicit.

Forcible as those suggestions were fifty years ago when they were made, the unbroken usage in the same direction since that time adds much to their cogency, and justifies the conclusion of the present Supreme Court of the State that the rule ought not to be disturbed.

Argument for the defendant corporation is, that the act

authorizing the tax in this case lays a direct assessment upon the property of the corporation, and fixes a special standard by which the value of that property shall be measured, and that in so doing it includes the portion of the corporate property invested in the securities exempted from taxation. But the assessment of the tax is to be made semi-annually on the average amount of their deposits for the six months preceding the respective days named, and not on the value of the property, as supposed. Reference to the average amount of the deposits is made, not as descriptive of the subject to be assessed, but as furnishing the basis of computing the amount of the tax to be 'paid by the corporation. The subject-matter to be taxed is the corporation, and the average amount of the deposits within the period named furnishes the basis of computing the amount.

Deposits, as the word is employed in that section, are the sums received by the institution from depositors without regard to the nature of the funds. They are not capital stock in any sense, nor are they even 'investments, as the word is there used, which simply means the sums received, wholly irrespective of the disposition made of the same or their market value.*

When the question as to the construction of that section was presented to the Supreme Court of the State in this case, the counsel of the State conceded that the assessment could not be maintained as an exercise of power conferred by the State constitution to impose and levy proportional and reasonable assessments, rates, and taxes, and the court held that if viewed as a tax assessed under that clause it would be contrary to the State constitution, because it was not proportional on all persons and estates as the constitution required. They accordingly held, as the same court ruled fifty years before, that the assessment imposed under the fourth section of that act must be regarded as an excise or duty on the privilege or franchise of the corporation, and not as a tax on the money in their hands belonging to the

---

* Bank of Savings v. Collector, 3 Wallace, 514.

depositors. The mandate of the fourth section, say the court, is clear and explicit. It is the corporation that is to make the payment, and if it fail to do so it is liable, not only to an action for the amount of the tax, but what is more significant, it may be enjoined from the future exercise of its franchise until all taxes shall be fully paid.*

Apart from the intrinsic merit of those two decisions, the Attorney-General contends that inasmuch as they are decisions of the highest court of the State in respect to the construction of the constitution and tax laws of the State, they ought to be regarded as authorities in this court. State decisions involving questions re-examinable here under the twenty-fifth section of the Judiciary Act, and especially the decision in the case removed here for review, can have no authoritative influence in this court, because the State courts in deciding those few questions act in a subordinate relation to the paramount jurisdiction of this court as conferred under the Federal Constitution.

Federal courts and State courts, it may also be remarked, exercise concurrent jurisdiction in a large class of cases, but the decisions of the State courts in such cases, where the question is one of a general character, and not one arising under the local law, are not regarded as authorities in this court, nor are the decisions of this court in such cases obligatory upon the tribunals of the States. But the decisions of this court in cases involving Federal questions are conclusive authorities in the State courts, and their decisions upon the construction of their own constitution and local laws are equally so in this court unless the case be one which presents some question arising under the twenty-fifth section of the Judiciary Act. No such questions were involved in the cases to which reference is made, and therefore they must be regarded as conclusive authorities that the tax in this case is a tax on the privileges and franchises of the corporation and not a tax on property, as contended by the original defendants. Decisions of the State court rendered

---

* Commonwealth *v.* Savings Bank, 5 Allen, 431.

since that time are to the same effect, and there is nothing in the decisions of this court in any respect inconsistent with that rule.

Recent decisions of this court, like those of earlier date, affirm that the public securities of the United States, whether held by corporations or individuals, are exempt from taxation by the States for any purpose. Such immunity from State taxation not only exempts such securities from taxes levied directly on the holder of the same, but even where such securities form a part of the capital stock of a bank the rule is equally well established that a State cannot tax such capital stock without deducting such portion thereof as is made up of such public securities. *Bank of Commerce* v. *New York City* (2 Black, 628). Statement of that case shows that the assessment was made under a then recent law of the State which required the tax to be imposed upon a valuation of the stock, like the property of individual citizens, and not as formerly on the amount of the nominal capital, without regard to the depreciation. Prior system of taxation in that State was different, and this court admits that according to that system it was immaterial as to the character or description of the property which constituted the capital, as the tax was one annexed to the franchise as a royalty for the grant, and was imposed wholly irrespective of the character of the property. Nothing more was decided in the *Bank Tax Case*, than that a tax levied under a law of the State which enacted that all banks and banking associations should be liable to taxation on a valuation equal to the amount of their capital paid in or secured to be paid in, and their surplus earnings, in the manner provided by law, was a tax on the property of the complaining bank, and that inasmuch as the capital of the bank consisted of public securities, declared by act of Congress to be exempt from taxation, the law imposing the tax was unconstitutional and void.*

Express reservation of the right of the States to tax the

---

* Bank Tax Case, 2 Wallace, 200.

privileges and franchises of the corporation was not made in that case, but in the case decided only one year later it was distinctly held that the States do possess the power to tax the shares of the national banks in the hands of the stockholders, although the capital of those banks is wholly invested in the public securities. Precise extent of that decision was, that the shares of those banks were subject in the hands of shareholders to ,State taxation under the limitation provided in the forty-first section of the act of June 3d, 1864, without regard to the fact that a part or the whole of the capital was invested in the national securities declared by act of Congress to be exempt from such taxation.*

Principal reason assigned for the conclusion is, that the liability to taxation is only a burden annexed to the rights and privileges granted to the corporation ; but the court also held that the tax on the shares was not a tax on the capital of the bank.†

Suppose it was otherwise, still the rule of construction adopted by the highest court of the State, in construing their own constitution, and one of their own statutes in a case not involving any question re-examinable in this court under the twenty-fifth section of the Judiciary Act, must be regarded as conclusive in this court.‡

Considered as a tax on property no part of the tax could be supported under the constitution of the State, and there never was a moment when such a tax, if viewed as a property tax, could be upheld since the State was organized under a written constitution. The amount of the tax does not depend on the amount of the property held by the institution, but it depends upon the capacity of the institution to exercise the privileges conferred by the charter.

Valuation of property has nothing to do with determining the amount of the tax, but the amount depends on the average amount of the deposits for the six months preceding the

---

* Van Allen *v.* Assessors, 3 Wallace, 573.

†  Queen *v.* Arnaud, 9 Adolphus & Ellis, New Series, 806.

‡  McCutcheon *v.* Marshall, 8 Peters, 240; Bank of Hamilton *v.* Dudley, 2 Id. 492; Leffingwell *v.* Warren. 2 Black, 599.

respective days named, and it is quite obvious that there is no necessary relation between the average amount of the deposits and the amount of the property owned by the institution. Granting that it is not a property tax, then it must be considered as a franchise tax laid upon the corporation for the privileges conferred by the charter, which, by all the authorities, it is competent for the State to tax irrespective of what disposition the institution has made of the funds, or in what manner they may have been invested. Counties, cities, towns, and school districts, as well as the State, may impose and levy reasonable assessments, rates, and taxes upon property, but the assessment to the corporation defendants, if paid, exempts them from all other taxation for the current year.*

State taxes on property are voted by the legislature, but the requirement of law in this case is that the treasurer shall send his warrants for the assessing thereof to the sheriffs of the several counties, who shall immediately transmit the same to the assessors to whom they are directed. Assessment of all taxes on property, whether state, county, city, town, or school district, is required to be made by the assessors of the cities and towns, and the cities and towns in case of neglect are made liable to the State and the several counties for the amount of the taxes. True lists are required to be furnished to the assessors by the inhabitants of all their polls and estates, both real and personal, not exempted from taxation, and the provision is that in case of neglect the assessors shall ascertain the particulars, as near as possible, and make an estimate thereof at its just value.†

Warrants with the tax-lists annexed are issued by the assessors, and the taxes are collected by the collectors elected by the cities and towns in the same manner as other subordinate municipal officers.‡

Franchise taxes are levied directly by an act of the legislature, and the corporations are required to pay the amount into the State treasury. They differ from property taxes,

---

* Sessions Laws, 1862, p. 200.  † General Statutes, 77, 78.  ‡ Id. 164

as levied for state and municipal purposes, in the basis prescribed for computing the amount, in the manner of assessment, and in the mode of collection, and they are in lieu of all other taxation, state or municipal. Comparative valuation in assessing property taxes is the basis of computation in ascertaining the amount to be contributed by an individual, but the amount of a franchise tax depends upon the business transacted by the corporation and the extent to which they have exercised the privileges granted in their charter. Unlike as the two systems are in every particular, it seems to be a work of supererogation to point out the differences, which are radical and substantial.

JUDGMENT AFFIRMED WITH COSTS.

The CHIEF JUSTICE, GRIER, J., and MILLER, J., in this as in the last preceding case dissented, on the ground that the tax was one on the property and not on the franchises of the Provident Institution.