JOSEPHINE THOMS *v.* HENRY A. THOMS et al.

1. HOMESTEAD EXEMPTIONS — WIFE'S INTEREST THEREIN. — The wife has not such an interest in the homestead, during the life-time of her husband, as that she can appeal to a court of equity for its protection.

2. SAME — POWER OF HUSBAND TO ALIEN IT. — The husband has the power to alien the homestead, without the concurrence of the wife.

3. EXEMPTION LAWS — SOURCES OF THEIR CONSTRUCTION. — The exemption laws are of recent introduction into the several states; are purely the creations of statute law, and the scope and extent of rights of parties claiming benefit under them, must be determined by reference to the statutes.

4. HOMESTEAD EXEMPTION — OWNERSHIP OF HUSBAND — COURSE OF DESCENT. — The recognition by the statutes and decisions is full and distinct, that so long as the husband lives, he is the owner of the homestead exemption, and upon his decease, the title and interest which he had, passes at once to the widow and children.

5. SAME — OBJECT OF THE STATUTE OF 1869 — AN IMPLICATION THAT HOMESTEAD MAY BE CHANGED. — The obvious intent of the statute amendatory of the exemption laws passed in 1867, was to throw around the proceeds of the

45  263
82  117

sale of the homestead for a limited time, the same immunity which attached to the property itself. It also implies that there may be a change of the homestead.

6. SAME—RULES AND PRINCIPLES GOVERNING IN THE CHANGE OF THE HOMESTEAD.—Upon the acquisition of a new homestead, the right to the former is abandoned. If the debtor removes from one to another and is owner of both, the immunity applies to the latter. He may change the homestead without the wife's consent. But so long as the wife and family occupy the premises, although the husband may have left them, it is still the homestead until the husband has actually acquired and established another.

7. HUSBAND AND WIFE—DEALINGS BETWEEN THEM AS DEBTOR AND CREDITOR —BANKRUPTCY OF HUSBAND.—The wife, when she married, owned separate property. This, the husband used in his mercantile business, and on an account between his wife and himself, gave her a note for the balance found due her. He was afterward discharged from his debts as a voluntary bankrupt, the wife proving her note as a debt without security, and receiving her *pro rata* with the other creditors: *Held,* That the indebtedness to the complainant (the wife) has been discharged by the decree of the bankrupt court.

8. CHANCERY COURT—MULTIFARIOUSNESS.—A bill of complaint by a wife, praying for an account against her husband for her separate property used by him, preferring her claim for alimony and maintenance, and seeking to enforce the wife's supposed rights touching the homestead, unites in it incongruous subjects for relief, and is multifarious and demurrable.

9. SAME—SAME—A BILL IN WHICH THERE IS NO CONNECTION BETWEEN THE ALLEGATIONS AND RELIEF PRAYED—OBJECTIONABLE.—A bill of complaint in which there is no connection between the allegations and relief prayed for is objectionable.

Appeal from the chancery court of Adams county WALKER, Chancellor.

The facts appear in the opinion of the court.

*Winchester & North,* for appellant.

The main question is, as to the interest of Mrs. Josephine Thoms in and to the house and lot, which, by the decree of the bankrupt court, in the matter of the bankruptcy of Henry A. Thoms, was conceded to be exempt, under art. 281, p. 529 of Rev. Code, "from seizure or sale under any execution, judgment or decree founded on any contract made or liability incurred" by the said Henry A. Thoms, and whether the same could be sold and conveyed by him to his brother Lewis D. Thoms, with the fraudulent intent to turn his wife homeless, destitute, contemned and deserted upon the world.

1st. Had Mrs. Thoms any present subsisting interest in this homestead which cannot be divested without her consent?

The Code provides that "every free white citizen of this State, male or female, being a householder and having a family, shall be entitled to hold exempt, from seizure or sale under any execution, judgment or decree, founded on any contract made or liability incurred, after this act shall take effect, the land and buildings owned and occupied by such debtor, provided the quantity shall not exceed one hundred and sixty acres, nor the value thereof the sum of $1,500, inclusive of improvements." Now, the bill alleges that the said Henry A. Thoms did, as a householder and having a family, claim to be entitled to hold this property as exempt under this statute, and, by the decree of the bankruptcy court, it was conceded to him. How long was this exemption to continue, and for whose benefit? The statute itself answers this question: "and such exemption shall continue after the death of such householder, for the benefit of the widow and family of the deceased, some or one of them continuing to occupy such homestead, until the youngest child shall become twenty-one years of age and until the death of the widow." By this statute the only mode by which the duration of this exemption can be shortened, is by all of the members of the family, the husband, wife and children, abandoning the same as a homestead. So long as "some or one of them" continues "to occupy such homestead," it is exempt. Now, while it is true that the right of the widow and children to this exempt property stands on the same footing with the right to dower; namely, that dower does not arise by contract, but is a matter of the social and domestic policy of the state. Magee v. Young, 40 Miss. 171. And this exemption law is founded upon a similar public policy, and was enacted in the interest of the state, for the public good. Mosely v. Anderson, 40 Miss. 54 ; Stephenson v. Osborne, 41 ib. 119–127. Yet the wife's interest or right in the homestead is different from the dower

interest, which is merely an inchoate one, to become vested after her husband's death and after assignment, that may be disposed of by the judicial code for his debts, while the occupation of the homestead gives her a right therein, without any further act on her part or any one for her, which cannot be diverted in any mode but by ceasing to occupy it. Does the act of 1865 (pamphlet act, p. 137), amending the homestead act, modify or change the same in this particular. Not in the slightest. The act of 1865 extends the exemption to personal property and extends the value of the homestead to $4,000 ; but the seventh and last section provides "that this act shall be construed as amendatory of the exemption laws of this State, and not intended to repeal the said laws."

Neither of these laws say that the exemption shall cease upon the abandonment of husband or the debtor or the head of the family, of the homestead as a residence, or that the same can be defeated by a sale and conveyance by him. There is no power given to any or all of the members of the family to alienate the homestead.

By the act of 1867 (pamphlet acts, 221) a limited power of alienation was given to the head of the family to exchange the homestead for another homestead, but the bill of complaint expressly charges that the sale and conveyance by Henry A. Thoms, the husband, to his brother Lewis V. Thoms, was extended for no such purpose. That the decree of the court below was erroneous seems so palpable upon the face of the statutes, that it seems hardly necessary to refer to adjudications in other states — but we may cite Grayson v. Taylor, 14 Texas ; Hoyt v. Howe, 3 Wis. 752 ; Taylor v. Hargous, 4 Cal. 265 ; Sergeant v. Wilson, 5 ib. 504 ; Poole v. Gerrard, 6 ib. 71 ; Williams v. Stone, 5 Wis. 534 ; Cowan v. McMurry, 2 Allen (Mass.) 204 ; McKee v. Wilcox, 17 Mich. 367 ; Lawson v. Remzer, 13 Iowa, 579.

*Wm. F. Mellen,* for appellees :

I. To say that the bill of complaint is multifarious, is to urge only one of several false objections. No argument is needed on this point.

II. The bill of complaint shows no right in the complainant to the relief prayed for. Does she wish an account between her and her husband ? If so, she shows no ground for it, as she fails to show any debt due to her from her husband. But her action for an account cannot be joined with the other matters in her bill set forth. Does she wish to compel the husband to support and provide for her ? On a proper showing in a proper bill the chancery court will no doubt compel her husband to provide for her maintenance. The real object of the bill is to secure to the complainant the homestead for the benefit of herself and child by a former marriage, after its abandonment by the husband as a homestead. She claims a right to its possession : 1st. As against her husband ; 2d. As against her husband's vendee ; 3d. As against his attaching creditors ; 4th. As against his mortgage creditors. For the reason before stated (the release of attachments and satisfaction of the deed of trust) it will be necessary to notice 3d and 4th. We argue 1st and 2d at the same time. It is important to bear in mind that the homestead claimed by the wife was the property of the husband, purchased by him with his own money, in his own name, before the marriage.

In this view the claim of the wife as set forth in her bill of complaint on the ground that she, as a mother of a child by a former marriage, is the head of the family, is simply, ridiculously absurd. Had a divorce been decreed, and did she own the property herself, there might be some reason in the position. But there cannot be two heads to the family of H. A. Thoms, and the head of one family cannot claim as exempt property which belongs to the head of another family. Besides this point the complainant's claim to the homestead property is barred on the following allegations of the bill ; 1st. That the debt claimed by her is still due

from her husband, notwithstanding his discharge in bankruptcy ; 2d. That the property was the homestead of the husband.

I. Her claim as founded on the debt and trust was abandoned in the court below as untenable. But we cannot avoid noticing it. From an inspection of the bill of complaint we find that the debt of the husband was never at any time due by him in any fiduciary capacity. There was never any trust of any kind. The complainant alleges that her husband received her moneys, the proceeds of sale of her property, and used it in his business ; but she nowhere alleges that he received, appropriated or used it, without her consent. This omission is important and must be taken against the pleader. But further, in September, 1867, after agreeing upon an account stated, she received from her husband a promissory note based upon this account stated, and afterward, of her own accord, freely and voluntarily, she consulted counsel, proved her claim (the promissory note) against the estate of her husband in bankruptcy, as an ordinary debt unsecured by lien, mortgage, incumbrance, or any other bond of security ; and received from the assignee her *pro rata* of the dividend of the bankrupt's estate. It must be regarded as a simple loan of money which she had a right to make under authority of Rev. Code of 1857, p. 336, art. 25.

The husband never purchased the property with her money, and he never appropriated or converted to his use any of the funds of the wife without her consent. Where, then, is the basis of this claim of trust? It did not and could not exist. Rev. Code, 1850, p. 336, arts. 24 and 25 ; Gibson v. Foote, 40 Miss. 788.

The case of Gibson v. Foote seems conclusive on the subject. The married woman's law of 1867 has no application to this case. Now the bankrupt law of 1841 provided that no creditor or other person, coming and proving his debt or other claim, shall be allowed to maintain any suit at law or in equity therefor, but shall be deemed thereby to have

waived all right of action and suit against such bankrupt, and all proceedings already commenced, and all unsatisfied judgments already obtained thereon, shall be deemed to be surrendered thereby. Bankrupt Law, 1841, § 5. And the high court of errors and appeals of Mississippi have given full force to that provision, and recognized it as "a complete bar to any further demand of a creditor who has proved his claim and received his *pro rata* share of the dividend arising from the bankrupt's estate, though the bankrupt may have been guilty of fraud, and have further held, that this is not restricted to any particular class of debts, but is general, covering debts of all kinds and classes provable against the estate of the bankrupt. Buckner v. Calcote, 28 Miss. 432.

The provision of the Bankrupt Law of March 2, 1867, is identical with that of the law of 1841. Bankrupt Law of 1867, § 21 ; ib. 1841, § 5.

The complainant's debt was therefore discharged by the discharge of the husband in bankruptcy.

II. The homestead exemption : She does not claim title to the homestead by right of dower, for in the homestead, as a homestead, she has no right of dower. Exempt property of the husband descends, on his death, to the widow and children, without reference to dower, and though the wife may have no claim, or may have waived, by the acceptance of the provisions of the will, all claim to dower. But she could not enforce any claim to dower against the vendees of her husband in the life-time of the husband. Rev. Code, 1857, p. 529, art. 281, and article under probate law as to appraisers setting apart exempt personal property ; Laws of 1865, p. 138, § 3 ; Laws of 1867, amend. to Ex. Law ; Laws of 1870, amend. to Ex. Law ; Whitworth v. Lyons, 39 Miss. 467 ; Holliday v. Holland et ux., 41 ib. 528 ; Wall v. Wall, 41 ib. 657 ; Tyler on Infancy and Covert. 515 ; Magee et ux. v. Young, 40 Miss. 168, 469 ; 4 Kent's Com. 36, 654 ; Jiggitts v. Jiggitts, 40 Miss. 719 ; Rev. Code, 1857, p. 467, art. 162, and p. 337, art. 30 ; Marshall et al. v.

King et al., 24 Miss. 90 ; and Wait v. Wait, 4 Barb. (S. C.) 192.

The object of the exemption law of 1857, say this court, in Whitworth v. Lyons, 39 Miss. 467, "is to secure a homestead and means of support to the debtor and his family ;" but the court do not say to the family as against the debtor, the exemption of property is a personal favor conferred by law upon the head of the family, male or female. It is only of property claimed by the debtor to be exempt. During the life of the husband, he is, of course, the head of the family. The law of 1857 provides, that the homestead "owned and occupied as a residence" by the debtor shall be exempt, and that after his death the exemption shall continue for the benefit of his widow and family. Where a woman is the head of the family, her homestead, owned and occupied by her, would, of course, be exempt from her debts. But were she a wife, and, therefore, not the head of the family, her property, though owned and occupied by her and her husband as a residence, would not be exempt from her debts legally contracted, under any fair interpretation of the homestead law.

It cannot be urged that the wife's signature to a conveyance of the homestead is necessary to relinquish dower. Of course, if the premises should, at any time before conveyance, lose the character of homestead, she would bar her inchoate right of dower. But this right, as we have seen, could only be enforced after her husband's death, even if there had been no sale in good faith for a valuable consideration. An inspection of the several exemption laws of this state shows plainly that, in cases of unlawful levy by the sheriff, no right of action is given to the wife either jointly with her husband or separately. It is given only to the owner of the property, the head of the family. Rev. Code, 1857, p. 529, art. 280 ; Ex. Law 1867, § 4 ; Ex. Law 1865.

And further, we learn that the exemption law of 1867, section 1, confers upon "the head of the family, who is

the owner of the property, express and full power to sell all exempt property, and only regulates the disposition of the proceeds."

The Law of 1870 gives this full power, and removes the regulation about the disposition of the proceeds of sale. It provides further, that the owner may give away the exempt property and of course the homestead. This law, it is true, was passed subsequent to the filing of this bill of complaint; but it shows the tendency of our state policy, and shows the power of the defendant, H. A. Thoms, under that law, to give away the homestead even if he had not already sold it for a valuable consideration.

But nowhere in our statutes do we find any act requiring that the wife shall join the husband in his conveyance of exempt property. This omission is very important in view of the fact that the requirement forms a part of the exemption laws in other states of the union. Such seems to be the case in Texas, where the old civil law doctrine of community is still in force. And yet, in Texas, it has been held, that the wife does not become the head of the family and control the homestead until after the death of the husband. Wood v. Wheeler, 7 Texas, 13.

In Vermont, there is a statute prohibiting the conveyance of the homestead by the owner (the husband) unless the wife joins in the conveyance. Gen. Stat. 1863, ch. 68. And a similar law is in force in Minnesota. Comp. Stat. (Minn.) p. 570, § 93.

Yet, in Vermont, it has been held, that the owner of a homestead, having a wife, may convey it by his own deed, and pass the title thereto during his life-time; and that after his death, and not before, the wife, if she survive him, may assert her right to it, provided it has not been lost by acquiring another homestead. Davis v. Andrews, 30 Vt. 678. In Vermont, it has also been held, that the statute of occupation, to create a homestead, must be personal and not by tenant. 28 Vt. 672.

In the statutes of Wisconsin we find the same prohibition

against the alienation of the homestead without the signa-
ture of the wife. Rev. Stat. (Wis.) ch. 102, § 55. And, in
Wisconsin, the courts have held, that this prohibition did
not make the wife a joint owner of the homestead with her
husband; and that an abandonment of the homestead by
the debtor, by his voluntary act, or its alienation by him
renders it liable to sale under judgment in favor of his
creditors. Hoyl v. Howe, 3 Wis. 752; Rev. Stat. (Wis.)
ch. 102, §§ 5, 51–55. See, also, Allen v. Cook, 26 Barb.
(N. Y.) 374.

A similar prohibition seems to be contained in the home-
stead law of California. Taylor v. Hargous, 4 Cal. 267.
And so positive is it, that to convey the homestead requires
the joint deed of the husband and wife, separate deeds
will not suffice. Ib.; Porter v. Garnett, 6 Cal. 711. But,
even in California, the courts hold, that the wife cannot sue
alone to recover the homestead; that there it is a joint
estate, with right of survivorship, and a suit to recover it
must be joint.

But, further, we insist, that the claim of exempt property
is personal to the owner thereof, and that there must be a
personal occupation and a claim of exemption by the
owner; and that the owner can abandon it or waive the
claim, whether the wife consents or not. Ex. Laws of Miss.
1857, 1865, 1867 and 1870; 22 Barb. (N. Y.) 656; 28 Vt. (3
Wms.) 672. And that "a wife cannot claim the benefit of
the homestead exemption acts in her husband's property
during the husband's life." Ex. Laws of Miss.; Getzler v.
People, 18 Ill. 194. And, in Mississippi, no property is
exempt in case of an absconding debtor. Miss. Laws of
1859.

SIMRALL, J. :

The record raises the question, mainly, whether the wife
has such interest in the homestead (during the life-time of
the husband), as that she can appeal to a court of equity
for its protection. The bill describes a persistent course of

ill treatment and oppression by defendant, Henry A. Thoms toward the complainant, his wife; prompted by the wicked motive of compelling her to remove from the house and premises in which she dwelt, which had been exempted and left to her husband, as a homestead, by the bankrupt court. That her husband had confederated with his brother to deprive her of home and shelter, and had conveyed the property to him, in fraud of her rights. That her husband had ceased to cohabit with her, but absented himself from his home. She prayed that the conveyance made to his brother might be declared void and canceled, that she might be quieted in the possession and enjoyment of certain parts of the house, and provision made for her support. Other subjects are introduced into the bill, which will be hereafter noticed. Art. 281, Rev. Code, p. 529, exempts from seizure, or sale under any execution, judgment or decree, the lands and buildings, occupied and owned as a residence by the debtor, he or she "being a householder and having a family." The act of the legislature of 1865, enlarges the amount and value of the exempt property; the third sections directs that upon the death of the husband, this property shall descend to the widow as the head of the family, for the use and benefit of herself and children. In determining the character of title which the widow and children took under the amendment passed in 1860, it was held in Mason v. O'Brien, 42 Miss., that the title vested immediately in the widow and children, on the death of the husband, and that the appropiate suit would be brought by them for its recovery. In Wally v. Wally, 41 Miss. 659, it was said to descend to them like lands to the heir. See, also, Hardin v. Osborne, 43 Miss. 535.

The exemption laws are founded in the beneficent policy of securing families against poverty and want, and protecting them against the misfortunes, the extravagances and follies of their heads. They are the recent introduction into the several states, are purely the creations of statute law, and the scope and extent of rights of parties claiming benefit

under them must be determined by reference to the statutes. Upon the many novel and embarrassing questions which have arisen, the courts have not always been harmonious. This, perhaps, is because each tribunal has been a pioneer, and had not the advantage of the discussions and judgments of the courts in other states, upon the same and kindred questions. The leading feature, in which the statutes of all the states that we have examined, concur, is, that the exempted property shall not be subject to seizure and sale, under judicial process, at the suit of a creditor. The protection is against creditors. But in several of the states the husband is deprived of the dominion over the title, unless with the concurrence of the wife. He cannot alien or convey unless she joins in the deed. The statutes of Massachusetts, California, Iowa, Texas, Wisconsin, and perhaps other states contain this restriction. In those states the courts hold that the conveyance of the husband, without the joinder of the wife in the deed, is null and void, wholly inoperative to pass the title or create an incumbrance. Bruner v. Wall, 23 Texas, 585 ; Yost v. Devault, 9 Iowa, 60 ; Richards v. Chase, 2 Gray (Miss.) 383 ; Sargent v. Wilson, 5 Cal. 504 ; Williams v. Star, 5 Wis. 534.

In the absence of such restriction, it would seem to follow that the title remains in the debtor, and his power of disposition is unembarrassed. There is no such restriction in our statutes. The prominent idea is to "exempt" the homestead from creditors ; its use and administration for the benefit of the family, is intrusted to the head. Whether this case does or does not develope the necessity for further legislation, so as more effectually to carry out the benefit of the homestead exemption, for wife and children, is a subject deserving legislative consideration.

In Smith et al. v. Allen et ux., 39 Miss. 473, the husband claiming to hold a slave as exempt from his debts, gave her by deed to his wife. It was declared that the debtor might dispose of exempt personal property, and that creditors could not pursue it in the hands of the alienee or

donee. It was urged for the creditors that the gift came with-
in art. 23, Code, 336, making void a deed from the husband
to the wife, as against his then existing creditors. But that
argument was met by the statement that the property was
"exempt" from debts, the creditors had no claim upon it,
either as against the husband or his donee.

The several statutes of this State, referred to, and the
judicial interpretations of them, very clearly embrace the
principle, that, upon the death of the husband, the exempt
property descends to and vests in the widow and children,
as land does to the heir. The personal effects do not come
to them through the administrator by distribution. The
recognition by the statute and the decisions is full and dis-
tinct, that so long as the husband lives he is the owner, and
upon his decease, the title and interest which he had,
passes at once to the widow and children. During his
life-time neither the widow nor children have a vested interest
in the property. In Green v. Marks, 25 Ill. 221, the ques-
tion was carefully considered, whether a judgment creditor
had a lien which could be enforced against the "home-
stead" after it ceased to be such by the act of the debtor. It
was held that the debtor could neither sell or mortgage. It
has been held, however, that under our statutes, if the
debtor aliens the homestead, a judgment lien attaches.

The amendment of the exemption laws, passed in 1867,
allows the debtor to sell the homestead for purposes of
re-investment, and exempts for a limited time the proceeds
from levy and garnishment. The right of sale is recognized,
twelve months are allowed for re-investment. During that
time creditors cannot reach the money.

The obvious intent of this statute was to throw around the
proceeds of the sale, for a limited time, the same immunity
which attached to the property itself; it also implies that
there may be a change of the homestead.

Upon the acquisition of a new homestead, the right to the
former is abandoned, as if the debtor removes from one into
another, and is owner of both. The immunity applies to

the latter, and the former ceases to be exempt, and may be seized and sold by creditors. Horn v. Tafts, 39 N. H. 478 ; Horner v. Adams, 28 Vt. 544 ; Taylor v. Boulward, 17 Texas, 74.

It is a principle of universal law, that the domicile of the husband is the domicile of the wife. Story's Con. of Laws. Nor is the assent of the wife necessary to enable the husband to select and fix the homestead. He may change it at pleasure without her consent. Williams v. Sweatland, 10 Iowa, 51. But so long as the wife and family occupy the premises, although the husband may have left them, it is still the homestead, until the husband has actually acquired and established another.

We are of opinion that on this branch of the case the complainant has shown no right to relief.

She claims also for no account against her husband for money, which belonged to her before her marriage, and which was used by him in his mercantile business. It is stated in the bill, that, touching this money, the parties made a computation and settlement, the husband executing to the wife his promissory note for the amount due, that in the course of the proceedings instituted by the husband, to be discharged as a voluntary bankrupt, this debt was preferred and proved against him, and the complainant was paid her *pro rata* from the bankrupt's estate. It is claimed, however, that she is not barred of its recovery, because it was a " trust" debt, within the meaning of the bankrupt law. Is that the character of this debt? There may exist the relation of creditor and debtor between husband and wife, and the latter may, by bill in chancery, obtain a monied decree against her husband. Simmons v. Thomas, sheriff, 43 Miss. 39. When the husband uses the wife's money with her consent, he thereby becomes her debtor. If he makes a written promise to pay, she has a remedy in the proper court on failure to comply. But in these sorts of dealings with each other, no extraordinary sanctity, or peculiar privilege characterizes the debt.

Gibson v. Foote, 40 Miss. 790.  This transaction comes within the terms of the 26th article, Code 336.  "Any married woman may loan her money, and take securities therefor in her own name."  We think that the indebtedness to the complainant has been discharged by the decree of the bankrupt court.

The bill is obnoxious to the charge of multifariousness. The several subjects introduced are incongruous.  There is no connection or dependency between the allegations and relief prayed for, in respect to the "homestead," and the indebtedness of the wife, on account of her money, used with her consent by the husband.  Nor have either of these any connection with the claim preferred for alimony and maintenance.

We affirm the decree of the chancery court, sustaining the demurrer and dismissing the bill.