WM. B. PARTEE et ux. *v.* JAMES STEWART.

1. HOMESTEAD EXEMPTION — HOW ACQUIRED — HOW LOST. — The debtor holds the homestead exempt upon the condition of occupancy as a residence; if abandoned, it is immediately subject to seizure and sale by a judgment creditor. When several separate tracts of land are owned by a debtor, the privilege of making a selection of the homestead does not exist. The law confines it to the parcel upon which the family reside and have their domicil.

2. HUSBAND AND WIFE — AGENCY. — The husband is not the general agent of the wife and cannot by his acts defeat the wife's interest in real estate, unless thereto authorized or sanctioned by her. Code of 1857, p. 314.

3. HOMESTEAD EXEMPTION — CASE IN JUDGMENT. — The law gives a homestead to every owner of the land, being a householder and head of a family. A married woman, the owner of separate property, and residing upon it as a domicil, with her family, is entitled to claim her homestead exemption. The husband is the head of a family, in the sense that wife and children are subject to his marital and paternal control. But he has no authority and control over the wife's property or the application of it to the support and nurture of the family, unless by her consent. If the land occupied is the domicil of the family, it is her residence with supreme control, except that she cannot mortgage it on a lien without his approbation.

APPEAL from the Chancery Court of Yazoo County. Hon. J. J. HOOKER, Chancellor.

The bill of appellee was filed in the chancery court of Yazoo county to enjoin appellants from setting up as a defense or plea a homestead exemption, to an action of ejectment brought against them by appellee, in the circuit court of Yazoo county. The bill alleges that Stewart, the appellee, recovered a judgment against William B. and Sarah D. Partee, in the circuit court of Yazoo county, upon which execution issued and levied by the sheriff on three plantations, called No Mistake, Tyrone and Lake Dick. The No Mistake and Tyrone were sold together, and bought in by James D. Partee, the son of Wm. B. and Sarah D. Partee, for about five hundred and fifty dollars. Upon these places, there was an incumbrance of about eight thousand dollars. Ap-

pellee bought the Lake Dick plantation for about fifty-six hundred dollars. The bill alleges that by claiming a homestead on No Mistake, bidders were prevented from running it up to its full value. The appellee alleges that after they had, by their fraudulent representations and practices, obtained said lands, then the said W. B. and Sarah D. Partee fraudulently set up a claim of homestead in the Lake Dick place; that the appellee would not have purchased said place at the price which he gave. All the facts, except as to fraud and the claim of homestead in No Mistake, are admitted.

*J. C. Prewett* for appellant:

1. Appellant's counsel reviewed the testimony, and argued that it was conclusively proved that the appellants were entitled to their homestead exemption. That they had lived on the Lake Dick place continuously, except when temporarily absent, since 1852, and the question was one of occupancy or residence, coupled with the intention to make the place occupied or used as a residence the family homestead.

2. That the other property was heavily incumbered, and that the Partees would more likely take their homestead in unincumbered than in incumbered property.

3. Reviewed the testimony as to what transpired on the day of the sale by the sheriff. Witness Barkley swears that the sheriff announced that the homestead was in the other land, and not in Lake Dick. In this he is contradicted by positive testimony, and in addition to this, his credibility is quite successfully attacked.

4. But suppose what Barkley says is true, how can that affect Mrs. Partee? W. B. and Jas. D. Partee had no authority to represent her (she was not at the sale), and she could not have invested them with such authority. A married woman cannot alienate her lands under our laws, except in a certain manner ; that is, by joint deed of herself and husband, properly executed and acknowledged. The code of 1857, p. 314, provides that no married woman shall lose her land by the default of her husband.

In Treadwell v. Herndon, 41 Miss., 38, it was held that the husband could not accept or waive service of process for his wife. How then can he act for her in the selection of her homestead?

5. But it is insisted by adverse counsel that the exemption laws do not apply to married women. The exemption laws tolerate no such construction. The act of 1857, which was merely amended by the act of 1865, gives exemption rights to "every citizen of this state, male or female, having a family." The code of 1871 employs the same language. The palpable object of these exemption statutes was to provide "reasonable comfort" for the *family*. It was the *family*, the great unit of our Anglo Saxon civilization, that was to be protected and shielded from want and suffering. That this was the policy intended to be subserved by our legislature is clearly seen by reference to the case of Mosely v. Anderson in 41 Miss. Exemption laws, like all other statutes, should be construed so as to effectuate the intention of the lawmaking power in enacting them. If the husband owns the homestead it is exempt; if the wife owns it, why should it be taken for debt, and she and her helpless children reduced to beggary and indigence? See the case of Trotter v. Dobbs, 38 Miss., 198.

6. The charge of fraud is expressly denied and is not sustained. Reporters find no brief in the record for appellee.

SIMRALL, J., delivered the opinion of the court:

It is manifest that the appellants, nor either of them had a homestead exemption, on the "No Mistake plantation," for the proof is uniform and clear that they never had a domicil on that property. In Whitworth v. Lyons, 39 Miss., 467, it was ruled under art. 281, code of 1857, p. 529, that the debtor held the exempt homestead upon the condition of occupancy, and if abandoned, it was subject immediately to seizure and sale by a judgment creditor. The residence of the family was upon the Lake Dick estate, and to that property the exemption attached, if any existed.

The claim is resisted upon two grounds by the appellee: First. That the appellants are estopped by the conduct of W. B. Partee, the husband, by causing it to be believed by the bidders at the sheriff's sale, that the exemption would be laid upon the No Mistake plantation, whereby that property brought a less price. The preponderance of the testimony, is that nothing was done by the husband to propagate that idea, although it may have prevailed. The husband is not the general agent of the wife. Treadwell v. Herndon, 41 Miss., 38. And cannot, by his acts, defeat the wife's interests in real estate, unless thereto authorized and sanctioned by her. Sec. 38, Code 1857, p. 314. When several separate tracts of land are owned by the debtor, the privilege of making a selection of the homestead does not exist; the law confines it to the parcel upon which the family reside, and have their domicil. Occupancy and domicil confer the privilege, which may be lost, by a removal, and acquisition of domicil elsewhere. Thoms v. Thoms, 45 Miss., 275.

Mrs. Partee owned as her separate property, three plantations, which were sold under the judgment in favor of the appellee. She resided (as the proof shows) with her husband and children upon the Lake Dick property.

The inquiry is reduced to this: Is a married woman owning separate real estate, and residing upon it with her husband and children, entitled as against her judgment creditor to the homestead exemption? The statute of 1857 describes the person who has the privilege thus: "citizen of the state, male or female, being a householder and having a family." The statute of 1865, thus: "The head of every family, being a white person and a house-keeper." The policy of this legislation is very clearly stated in Mosely v. Anderson, 40 Miss., 54, among other reasons that "families shall not be deprived of shelter and reasonable comforts." The right is not dependent "on the merit or demerit of the debtor." The state is concerned that the citizen shall not be reduced to pauperism, by deprivation of means of

support. The exemption applies, in the words of the act of 1857, to the "land and buildings *owned* and occupied as a residence by such *debtor.*" In this case Mrs. Partee was the *debtor ;* she was the *owner* of the "land and buildings," and with the family she occupied them as a residence. She was the exclusive owner ; the marital rights of the husband did not extend to the income, rents and profits ; she could lease without the concurrence of the husband ; and could put the lessee in possession of the premises, including the "buildings." Having this large control over the property, she was certainly within the reason of the statute, and we think within its words. The debtor must both own and reside upon the land ; must be a householder, and have a family. Under that policy, which secures to the wife, all property owned by her at the time of the marriage, and all subsequent acquisitions, there must be a multitude of instances, where all the means, for the support of the family, are exclusively hers ; and the argument is just as strong to protect her homestead, from seizure and sale, as where the property belongs to the husband, and he is the debtor.

The elements which distinguish the privilege (including by express words of the statute both "male and female") are the ownership of the land, residence upon it with a family. These are rather the relations of the debtor to the property, than the subordination of the several members of the family, the one to the other. The husband is the head of the family in the sense that the wife and children are subject to his marital and paternal authority. But he has no authority and control over the wife's property, or the application of it to the support and nurture of the family, unless by her consent. If the land occupied is the domicil of the family, it is her residence, with supreme control, except that she can not mortgage or alien without his approbation. Bank of La. v. Williams and Wife, 46 Miss. Rep., 618.

We are of opinion that Mrs. Partee is entitled to the homestead exemption in the Lake Dick plantation.

Decree reversed, and cause remanded for further proceedings in accordance with this opinion.