## No. 11,755.

### MECHANICS AND TRADERS INSURANCE COMPANY VS. MAURICE J. HART.

In a *quasi* contract where the original contract is not at issue, to return the price of the sale of a thing which the seller has not delivered, Art. 2276 of the Civil Code does not apply. One witness is sufficient to establish the non-delivery of the thing sold.

APPEAL from the Civil District Court for the Parish of Orleans. *Théard, J.*

---

*Percy Roberts* for Plaintiff, Appellee.

---

*Branch K. Miller* for Defendant, Appellant.

---

Argued and submitted November 4, 1895.
Opinion handed down November 18, 1895.
Rehearing refused March 23, 1896.

---

The opinion of the court was delivered by

McENERY, J. The plaintiff, through a broker, purchased of the defendant nine bonds of the State of Louisiana. They were bonds of one thousand dollars each and numbered 749, 750, 771, 797, 808, 821, 853, 863, 905. These are some of the bonds which are invalid; and which were stolen from the office of the State Treasury by the Treasurer, E. A. Burke, and placed on the market. The *status* of

these bonds has been fixed by this court, and there is no effort in this suit to establish their validity. The plaintiff brought this suit to be reimbursed the price, with interest, that he paid for said bonds.

There is no question as to his right to obtain the relief prayed for, if the bonds are such as are described in the petition of plaintiff. The evidence fully and completely establishes the fact that the bonds are such as are described, and that they were purchased from the defendant.

The only defence is to the insufficiency of the evidence, the defendant claiming that plaintiff's case depends upon proving a contract for the purchase of ten thousand dollars of State bonds, which must be proved by written evidence, or by the testimony of at least one credible witness and other corroborating testimony. R. C. C. 2276.

There is no attempt here to enforce a contract against the defendant for any sum of money over five hundred dollars. Defendant's liability arises from a *quasi* contract, to restore the price of that article he has agreed to deliver, and which he has failed to do. The original contract is not in question. It is not specially denied and put at issue. The only question at issue is as to the identity of the bonds. This is fully established by the broker who made the purchase for the plaintiff. But we are strongly inclined to the opinion that the requirements of Art. 2276 of the Civil Code have been complied with. One witness, the broker, swears most positively to the purchase of the bonds from the defendant. He is corroborated by his clerk and by the president of the insurance company, who instructed him to make the purchase. The broker gave the defendant a check on the Union National Bank for the price of the bonds, and on delivery of the bonds to the company he received a check from the insurance company for the amount.

In fact, there is the testimony of one witness and other corroborating circumstances to the purchase of the time bonds.

Judgment affirmed

### DISSENTING OPINION.

WATKINS, J. As this suit involves, and the court has dealt with the same issues as those in the case of Pugh vs. Moore, Hyams & Co., 44 An. 209, I dissent from the views entertained herein by the majority of the court, for the reasons expressed in my dissenting opinion in that case. *Vide* pp. 227 to 251.

I wish to emphasize the statement therein made, to the effect that

Agricultural and Mechanical College bonds of the State of Louisiana,. of the series involved in this suit, were *primarily* executed and issued by the proper officers of the State for value. That they are in the form of commercial obligations, payable to bearer, at a future date. Under the funding laws of the State, enacted in pursuance of a constitutional enactment in the year 1874, they were surrendered to the Board of Liquidation of the State as valid and binding obligations of the State, and in exchange therefor consolidated bonds of the State were issued in the form they are presented to the court.

That they subsequently passed into circulation as valid obligations of the State for value, and in the due course of dealing and business were listed by the local Stock Exchange; that from that date to the month of September, 1889, a period of nearly fifteen years, they were bought and sold in open market without suspicion or suggestion of fraud or illegality; that it was during that period of time plaintiff company purchased same from defendant, through the medium of a broker, for a valid and adequate consideration, and in the usual course of trade.

Finding these bonds in its hands after the disclosures that were made in September, 1889, to the effect that they were fraudulent. and illegal because they had been theretofore condemned and placed under ban by a clause in the organic law of 1879, recalling them from circulation and directing them to be destroyed by the Legislature, plaintiff brought this suit against the defendant as vendor thereof, and demands judgment against him on the theory that he sold it,. fraudulent and void obligations of the State, instead of legal and valid obligations of the State.

To what I have said in argument I do not propose to add one word; nor to the authorities cited do I propose to make any addition.

For the proposition that when the State (sovereign though she be) goes into market to borrow money upon her *promises to pay* she occupies a plane which is occupied by any private individual in like situation; and her obligations possess the same significance as those of private individuals seeking relief in courts of justice, and no other, I still contend.

If that be a correct proposition of law, it follows necessarily that the declaration of the State—albeit through a command in the Constitution—can no more affect her promises to pay, in the hands of third and innocent holders, than a similar declaration made by

an ordinary maker of a negotiable promissory note, payable at a future date after it had passed into the hands of an innocent third person for value.

That the obligations of the State had passed into the hands of third persons, and were outstanding, in the hands of third and innocent holders for value, at the date of the adoption of the Constitution of 1879, and so remained until the discoveries in September, 1889, was a matter of proof in the case of Pugh vs. Moore, Hyams & Co.; but since that date the Legislature of the State has enacted and promulgated a law, in the shape of a concurrent resolution, in which all these aforesaid facts are specifically set out and enumerated. Act 182 of 1894.

In that resolution it is stated that whereas certain banks, as fiscal agents of the State, had "paid to the holders thereof certain interest coupons of certain consolidated bonds of the State of Louisiana maturing July 1, 1889; and, whereas, the bonds from which said coupons had been detached were subsequently ascertained to be the property of the State of Louisiana, and which had fraudulently been put in circulation by E. A. Burke, then Treasurer of the State of Louisiana, * * *

"*Be it resolved*, That the Auditor is authorized and directed to warrant in favor of said banks for the sum of two thousand six hundred and sixteen dollars each, said sums being the respective amounts paid by them as fiscal agents of the State aforesaid upon any unexpended balance in the hands of the State Treasurer of the appropriation made for the payment of interest upon the consolidated bonds of the State of Louisiana by the Legislature of 1888; and the Treasurer is hereby authorized and directed to pay said banks the said sums in the usual course."

This legislative enactment, I take it, is an emphatic and undisguised recognition on the part of the legislative department of the government of the State's obligation to pay the identical bonds about which this defendant is sued.

This act was passed, approved and promulgated *since* the Pugh case was decided and with a full knowledge of its scope and effect.   And the legality of that resolution was affirmed in State *ex rel*. Banking Company vs. Auditor, 47 An. 1679.

Considering these facts I can not see how this defendant can be compelled to reimburse the plaintiff the amount it expended for the

bonds in controversy, contemporaneously acquired with the payment by the banks of the interest coupons which were detached from the self-same bonds.

The defendant is in identically the same position as the banks.