ROBBINS, et al. *v.* BERRY.

Mar. 24, 1952.

No. 38273 (57 So. (2d) 576)

**Edwards** and **Edwards**, for appellants.

**Dan E. Breland,** for appellee.

**Kyle, J.**

This case is before us on appeal from an interlocutory decree of the Chancery Court of Simpson County confirming the title of the appellee, Otto Berry, to a 71-acre tract of land which was owned by J. O. Berry, now deceased, during his lifetime, and which was conveyed by J. O. Berry to Harvey Robbins by deed dated January 3, 1939.

J. O. Berry died intestate on November 2, 1948, and left surviving him his wife, Mrs. Lina Howell Berry, and nine children. After the death of their father the nine children conveyed their interests in the above mentioned 71-acre tract of land to their mother, Mrs. Lina Howell Berry.

On December 31, 1948, Mrs. Lina Howell Berry filed her bill of complaint in this cause against Harvey Robbins, J. D. Berry, Mrs. Gertie Van Zandt, and G. C. Van Zandt, as defendants, and in her bill Mrs. Berry asked that the deed of conveyance that had been executed by her husband, J. O. Berry, to Harvey Robbins on January 3, 1939, conveying the above mentioned 71-acre tract of land to Harvey Robbins, be cancelled on the ground that the 71-acre tract of land at the time of the execution of the deed, constituted a part of the homestead of J. O. Berry and his wife, Mrs. Lina Howell Berry, and that the conveyance of the 71-acre tract of land to Robbins was made without the complainant's consent and without her signature and was therefore invalid. Mrs. Berry alleged in her bill that at the time of the execution of the deed by her husband to Robbins she had been forced to leave the home because of the threats and abuse of her husband and because of his excessive use of intoxicating liquors, that she was living apart from her husband for justifiable cause, and that she had not relinquished or abandoned her homestead interest in the 71-acre tract of land. In her bill she also asked for a cancellation of a deed to the same land executed by Harvey Robbins to J. D. Berry on September 22, 1939, and a deed from J. D. Berry to Mrs. Gertie Van Zandt dated September 28, 1939, conveying to Mrs. Van Zandt the north 30 acres of the 71-acre tract, and a deed from Mrs. Van Zandt to G. C. Van Zandt dated December 1, 1939, conveying to G. C. Van Zandt the same north 30 acres of the 71-acre tract. She also alleged in her bill that on May 9, 1940, J. D. Berry, Mrs. Gertie Van Zandt and G. C. Van Zandt had executed an oil, gas and mineral lease on the 71-acre tract to one Charles B. Gholson, which Gholson had later assigned to the Lion Oil Company; and she asked for an accounting for rents and for the monies received by the defendants from the oil, gas and mineral lease.

The defendants in their answer denied that the 71-acre tract of land constituted a part of the homestead of J. O.

Berry and his wife at the time of the execution of the deed to Harvey Robbins, or that the 71-acre tract had ever been occupied by J. O. Berry and his wife as a homestead. The defendants in their answer averred that the complainant at the time of the execution of the deed was living apart from her husband of her own free will and choice, and without any coercion, threats or fear; and they denied that the complainant was living apart from her husband because of his cruelty or because of his excessive use of intoxicating liquors.

The proof showed that J. O. Berry and Lina Howell Berry were married in 1899, and that they settled in 1904 on a 26-acre tract of land near Braxton, in Simpson County, where they continued to reside for a period of more than thirty years and reared a large family of children. The legal title to the 26-acre tract of land was taken originally in the name of J. O. Berry, but in 1913 Mr. Berry conveyed the 26-acre tract of land to his wife. In 1918 Mr. Berry purchased a 71-acre tract of land, known as the ''Bob Everett Place,'' which adjoined the 26-acre tract on the east. The deed of conveyance of the 71-acre tract was made to J. O. Berry. Thereafter the two tracts of land were treated as a single farm unit and constituted the homestead property of J. O. Berry and his wife. The tillable portion of the 71-acre tract was cultivated by Mr. Berry, with the aid of his wife and children, and the woodland and waste lands were used for pasturage. The 26-acre tract and the 71-acre tract were separated by a wire fence, but there was a road from the main dwelling house through the entire farm. In 1930 the main dwelling house on the 26-acre tract was destroyed by fire, and the family moved into a house on the 71-acre tract, where they resided for several months while they were rebuilding the dwelling house on the 26-acre tract. In December, 1934, Mr. Berry and his wife conveyed to their son, Jimmie Berry, the 26-acre tract on which the main dwelling house was located, but in the deed of conveyance they reserved for themselves a life

estate in the 26-acre tract, and it was expressly stipulated that the grantee was not to have the possession or control of the property until after the death of Mr. Berry and his wife.

During the summer of 1935 Mrs. Berry left the family homestead and moved into a house on a 35-acre tract of land, which had been owned by her father during his lifetime, and which was situated about one-fourth of a mile northwest of the J. O. Berry dwelling house. She testified that she was forced to leave the family homestead because her husband had become addicted to the excessive use of intoxicating liquor, and while under the influence of intoxicating liquor was cruel and abusive in his conduct toward her and often threatened to do her great bodily harm. Her testimony on this point was corroborated by the testimony of other witnesses. As a result of Mr. Berry's gross misconduct toward her, Mrs. Berry lived apart from her husband during the remaining years of his life. Mr. Berry during that time visited his wife frequently and carried her firewood, vegetables, green corn and other produce of the farm. He often ate the midday meal at Mrs. Berry's house, and occasionally when he was sick he would go to her house and stay there during his illness so that she could nurse him and care for him. They continued to maintain friendly relations toward one another; but Mrs. Berry never went back to the home on the 26-acre tract of land. She testified that she had talked about going back many times, and that if Mr. Berry had been willing to give up the habit of getting drunk she would have gone back.

On January 3, 1939, Mr. Berry sold the 71-acre tract of land to Harvey Robbins without Mrs. Berry's knowledge or consent. Mrs. Berry testified that sometime thereafter an effort was made to get her to sign the deed of conveyance, but she declined to do so.

The chancellor after hearing the testimony of the witnesses found that the complainant was entitled to the relief prayed for in the bill of complaint and entered a

decree cancelling the deed of conveyance of J. O. Berry to Harvey Robbins, and the later deeds executed by Robbins to J. D. Berry and by J. D. Berry to Mrs. Gertie Van Zandt and by Mrs. Gertie Van Zandt to G. C. Van Zandt; and the chancellor granted an appeal to this Court to settle the principles of law involved in the case. After the trial in the lower court Mrs. Berry conveyed the 71-acre tract of land to her son, Otto Berry, and on March 21, 1950, Mrs. Berry died, while the case was pending in this Court on appeal. Thereafter the suit was revived in the name of Otto Berry, as complainant. The case was heard on appeal at the September 1950 term of the court, and the decree of the chancellor was reversed because no process had been served on the Lion Oil Company which had been named as a party defendant. See Robbins v. Berry, 209 Miss. 422, 47 So. (2d) 846.

After the case had been remanded to the lower court an order was entered upon the motion of the complainant dismissing the suit as to the Lion Oil Company; and J. D. Berry, one of the defendants, having died in the meantime, an order was entered for a revivor of the suit as to him in the name of his heirs. The defendants were also permitted to amend their answer by incorporating in their answer a plea of equitable estoppel. The case was then tried again at the February, 1951, term of the court, under an agreement that the evidence taken on the former trial should constitute the evidence in the case for the second trial, and the chancellor again rendered a decree in favor of the complainant. In that decree the chancellor ordered that the deed executed by J. O. Berry to Harvey Robbins on January 3, 1939, and the other deeds mentioned in the original decree be cancelled, and that title to the 71-acre tract of land be vested in Otto Berry as the successor in title to Mrs. Lina Howell Berry, the original complainant. From that decree the defendants have prosecuted this appeal.

Only two points are argued by the appellants' attorneys on this appeal: (1) That the decree of the lower court is

contrary to the law of the case, and (2) that the decree of the lower court is against the overwhelming weight of the evidence.

We have carefully examined the testimony of the witnesses, and in our opinion neither of the above mentioned points is well taken.

The testimony of the witnesses clearly shows that the 26-acre tract of land, upon which the family dwelling house was located, and the 71-acre tract of land acquired by J. O. Berry in 1918 and lying immediately east of and adjoining the 26-acre tract constituted the family homestead of J. O. Berry and his wife, and that the two parcels of land were operated by them as a single farm unit for many years. The two tracts contained less than 160 acres in the aggregate, and there is no contention that the value exceeded $3,000. For the purpose of determining the homestead rights of the parties, it was immaterial that the legal title to the 26 acres was vested in Mrs. Berry and that the legal title to the 71 acres was vested in Mr. Berry, or that the main family dwelling house was located upon the 26-acre tract, which was owned by Mrs. Berry, instead of the 71-acre tract which was owned by Mr. Berry. That point was definitely settled by the opinion of this Court in the case of Powers v. Sample, 69 Miss. 67, 12 So. 377. In that case Chief Justice Campbell, speaking for the Court, said: "The question presented by this case is not whether a husband and wife may each be allowed a homestead as against creditors, but whether a homestead—that is, land occupied as a residence and which, in quantity and value, does not exceed the limit prescribed by law—partly owned by each spouse is exempt; and we hold that it is. 'It is no concern of the creditor to which member of the family the title belongs.' If the title to both tracts of land had been in the husband or wife singly, the exemption would have been recognized, and it cannot be held that the fact that each owned part of the land affects prejudicially their claim to exemption. Partee v. Stewart, 50 Miss. 717;

Lowell v. Shannon, 60 Iowa, 713, 15 N. W. 566; Crane v. Waggoner, 33 Ind. 83; Orr v. Shraft, 22 Mich. 260; Stout v. Rapp, 17 Neb. 462, 23 N. W. 364.''

Under the provisions of Section 1765, Code of 1930, Section 317, Code of 1942, the homestead property is exempt from seizure or sale under execution or attachment. Under the provisions of Section 1778, Code of 1930, Section 330, Code of 1942, a conveyance of the homestead property owned by the husband is invalid unless signed by the wife of the owner, if he be married and living with his wife. In the case of Scott v. Scott, 73 Miss. 575, 19 So. 589, this Court held that a husband who has driven his wife from his home and refuses to permit her to return cannot lawfully convey the homestead property to a third person without the consent of his wife. In that case the Court said: ''The domicile of the husband is the domicile of the wife, and so long as she does not willingly withdraw herself therefrom, or do any act by which her rights are forfeited, she is entitled to the protection of its shelter. No violence or subterfuge or device of the husband can thrust the wife from the protection of the statute, nor free him from its restraint. So long as the wife has the right and the will to remain at home, she is, in our opinion, to be considered as there living within the meaning of the statute. We are therefore of opinion that the conveyance of the homestead under the circumstances charged in the bill, was invalid.''

The rule laid down in the Scott case has been interpreted to mean that a conveyances of the homestead property by the husband without the wife's signature is invalid, even though the wife be not living on the homestead property at the time of the execution of the deed of conveyance, if her absence is occasioned by the act of the husband in driving her away from the home. Crosby v. Hatten, Miss., 56 So. (2d) 705. Mrs. Berry's separation from her husband at the time of the execution of the deed to Harvey Robbins was due to her husband's habitual drunkenness and his gross misconduct and mis-

treatment of her, and the legal restriction on Mr. Berry's right to convey the homestead property without his wife's consent was not removed as a result of her absence from the home under the circumstances shown above. Therefore, the conveyance of the 71-acre tract of land to Harvey Robbins without her signature was invalid.

The suit for the cancellation of the deed of conveyance was filed within the ten-year period allowed by the statute. There are no facts to support a plea of equitable estoppel; and this Court has held that laches is no defense to a suit of this kind if the proceedings are instituted within the statutory period. Hill v. Nash, 73 Miss. 849, 19 So. 707; Houston v. National Mutual Building & Loan Association, 80 Miss. 31, 31 So. 540, 92 Am. St. Rep. 565; Cox v. American Freehold & Land Mortgage Co., 88 Miss. 88, 40 So. 739; Lake v. Perry, 95 Miss. 550, 49 So. 569; Johnson v. Carter, 193 Miss. 781, 11 So. (2d) 196.

For the reasons stated above, the decree of the lower court is affirmed and the cause is remanded.

Affirmed and remanded.

McGehee, C. J., and Alexander, Hall and Holmes, JJ., concur.