---
Brigham v. Bush.
---

---
⋯•••⋯

BRIGHAM *vs.* BUSH and PERCY.

A widow, occupying the farm left by her former husband and living with, and providing for, the minor children of the deceased, has a legal right to the possession of, and a qualified interest in, a calf which she has raised from a cow left by her desceased husband, which will authorize her to maintain an action against any person, except such minor children, to recover the possession thereof.

Yet a milch cow, so in the possession of a widow living with and providing for the infant children of her deceased husband, is by the statute so far devoted and set apart in trust for the specific object of supporting the widow and children as to secure it from liability to be taken on execution for the individual debts of the widow.

A cow in the possession of a widow, under such circumstances, being the only cow in her possession, is also exempt from levy or sale on execution, on the ground of the widow being a *householder,* within the meaning of the provisions of the revised statutes relative to executions. (2 *R. S.* 367, § 22.)

And this, notwithstanding the widow marries a second husband, who lives with her, upon the farm left by the deceased ; if she continues to provide for the infant children, after the second marriage, in the same manner as she did before.

APPEAL from a judgment of a justice's court. The plaintiff was the widow of one Hiram Rust, who died, as it appears, intestate, leaving her and seven children in possession of a farm, upon which she then lived and now lives. Four of these children still remain with her ; the eldest of whom is eighteen and the youngest ten years old. There was no evidence of administration upon the estate of her deceased husband, (Rust,) nor of the extent of his personal

Brigham *v.* Bush.

property to be administered upon. Since the death of her husband, (Rust,) the plaintiff has provided for the minor children that have lived with her, and still provides for them. During the time of her widowhood she contracted a debt of above $8 to the defendant Bush. This action was brought by the plaintiff in her own name alone. In the spring of 1860 she was married to one Robert Brigham, and is now Brigham's wife. Brigham, upon his marriage, took up his residence upon the farm occupied by the plaintiff, and now lives on the farm with her. The action was in the nature of trover, for taking and driving off a cow, and converting the same to the use of Bush, the defendant. The cow in question was the calf of another cow that had been owned by Rust, the plaintiff's first husband, and she was on the farm at the time of his death. The cow in question was raised by the plaintiff, is now eight years old, has been used and kept to supply milk and butter for the plaintiff's family, and is the only cow that has been kept for that purpose since the death of Rust, except the one that was mother of this cow, about which there is no evidence how or at what time she was disposed of. After the marriage of the plaintiff to Brigham, and in August, 1860, Bush, one of the defendants, sued Brigham and wife (the plaintiff) in a justice's court, for the debt of the plaintiff, while a widow, and recovered a joint judgment against them for $8.60 damages and $2.30 costs, upon which judgment an execution was issued to the defendant Percy, who was then a constable, and who, by direction of Bush, the other defendant, levied upon and sold the cow in question; in which action the plaintiff recovered a judgment, and from that judgment the defendants appealed.

*R. Swinburne,* for the appellant.

*Keeler & Mooney,* for the respondent.

POTTER, J. The objection raised, that the plaintiff's husband should have been joined with her in this action, and for

the reason that the cow in question was not her sole and separate property, I think is not well taken. . As between herself and her present husband, it was her sole and separate property. He obtained no legal interest therein, by his marriage to her. Whatever interest she had in the property at the time of her marriage to him, or in the rents, issues and profits thereof, as an unmarried female, by virtue of the provisions of § 1, chap. 200, session laws 1848, "continued to be her sole and separate property, as if she had remained a single female." So, too, this action having been brought, and her last marriage having been entered into subsequent to the date of the act of 1860, (*Session Laws* 1860, *ch.* 90, § 7) the action in her own name is clearly authorized. As the occupant and possessor of the estate left by her former husband, (Rust,) she having raised the animal from its infancy, and having had the possession and use of it in providing for the minor children, (of her deceased husband,) who still lived with her, and for whom she still continued to provide, down to the day she was deprived of the possession, she had, by virtue of the statute, a legal right, not only to the possession, but a legal interest of some kind, contingent perhaps, but still an interest which, in contemplation of law, was property, and which was, for the time being, a sole and separate interest therein. By 2 *Rev. Stat. p.* 83, § 9, it is provided that "where a man having a family shall die, leaving a widow, or a minor child, or children, the following articles *shall not be deemed assets,*" &c. Then, after enumerating a list of articles, including among them "one cow," follow the provisions of section 10, "*The said articles shall remain in the possession of the widow if there be one, during the time she shall live with,* and provide for, *such minor child or children.*" To whomsoever the ultimate title to this property may fall, the law expressly declares that the *possession* is, and shall be, in the widow. Such possession, alone, is sufficient title for the time being, against all the world; at least as against all but these minor children.

Brigham *v.* Bush.

This view of the law, if correct, disposes of another objection of the defendant, that the action was not prosecuted in the name of the real party in interest, as required by § 111 of the code. Who then is the real party in interest? The defendant's counsel insists that the cow belonged to "the estate of the deceased husband Rust," and that the title, in the absence of proof of administration, is in his heirs at law. But the statute expressly declares that the cow, and other excepted articles, shall not be deemed assets of the intestate; nor are they to be appraised. If they are not his assets, how then is the title to it in his estate? The title is only declared by statute to belong to any one in particular, upon the happening of a certain contingency; and then, not to the heirs generally, but to the minor children; and that only upon the contingency that the widow ceases to live with and provide for them. As this contingency may never happen in their lives, and as by the evidence it had not happened in this case when the action was brought, the exclusive right to the *possession*, and the title, at least for the time being, is in the widow; or, if indeed the ultimate title to the property should be regarded as being in the heirs at law, or in the minor heirs, I think the declaration of the statute in regard to the possession and use is sufficient to authorize her as their lawfully created trustee, to bring the action as trustee, under § 113 of the code. But it is not necessary to decide this as a question in the case. I have based my opinion upon the other view.

It is also urged, that there being evidence that there were other cows upon the farm, the cow in question cannot be claimed as the excepted cow, without a specific designation by the persons authorized to set apart to the family one cow. There is, it is true, evidence of there having been two other cows. One, however, does not seem to have been in existence at the husband's death, and was not milked, but "beefed," as the testimony is, and there is no evidence that the other was kept after his death, as a milch cow. Nor does the statute anywhere expressly authorize any person to designate

what particular cow shall be set apart and assigned to the possession of the widow, in order to provide the minor children with food. There is no prohibition against the widow choosing, nor is there any reason why she should not choose, if a choice is to be made. Nor is there any reason why, in the absence of statute direction, the widow is not entitled to select the most suitable one, within the meaning of the statute. It can hardly be regarded as an overstrained construction of the terms and meaning of this benevolent statute to hold that the cow therein excepted was intended to be a milch cow; especially in a case where there was no other than a dry one, or one to be fattened for market.

The word "cow," construed in reference to the providing for minor children, implies, I think, something more than merely an animal of that species; otherwise the word ox would have been equally appropriate. The cow in question is the the only one shown by the case to have been kept for a milch cow. I think, therefore, that while the title and possession of the cow in question was sufficiently in the plaintiff, legally, to authorize her to bring the action in her name alone, for its conversion, the title was at the same time, by the provision of the statute, *so devoted and set apart* in trust for the specific object of supporting the widow and minor children, as to secure it from liability for the individual debts of the plaintiff.

But I think the plaintiff was also entitled to recover, on the ground that she was at the time of the conversion of the property a *householder;* that this, being the only cow in the family, was exempt by the provisions of the statute, (2 *R. S.* 367, § 22,) which are as follows: "The following property, when owned by a person being a *householder,* shall be exempt from levy and sale under any execution," &c. This section, subdivision 4, specifies "*one cow.*" By all the legal definitions of *householder,* it will be seen that from the time of the death of her first husband until her marriage to the second, the plaintiff was a householder. She was the chief

Brigham *v.* Bush.

head, and provided for the support of a family. In *Bowne* v. *Witt*, (19 *Wend.* 475,) Bronson, J. says, "the word *householder*, in this statute, means the head, master, or person who has the charge of, and provides for, a family." By Webster, it means " a man or woman who maintains a family state in a house ; the master or mistress of a family." The plaintiff resided on the farm upon which her husband died, and provided for his and her minor children. She continued to do this after her marriage to her second husband. By section 2 of the act of 1860, ch. 90, " A married woman may bargain, sell, assign and transfer her separate personal property, *and may carry on any trade or business, and perform any labor or services, on her sole and separate account;* and the earnings of any married woman, from her trade, business, labor or services, shall be her sole and separate property, and may be used and invested by her in her own name." Surely this provision is broad enough to permit a woman, though married, to be a *householder*, under the definitions above laid down. And there is, in the case, the direct evidence that at the time of the conversion of this property she was still providing for her minor children. All these had been and were her household, (except her husband, as to whom, and as to whose support, there is no evidence.)

The fact that she married, and took him into her household, and that he did not take her to his, (if indeed he had any,) and the absence of all evidence that he furnished support either to her or to her family, added to the positive evidence in the case that she still provides for her children, is, I think, sufficient to overcome any legal presumption that her headship of the family, and household, had been changed, or merged by the marriage ; and more especially so, since the statute of 1860, which authorizes, if it does not create, a separate individuality, in married females, in conducting and carrying on business transactions, independent of their husbands, or of the rights of their husbands. It is not necessary for the proper decision of this case, and it might be a difficult

task if attempted, to define the present existing legal status of a husband, viewed in the light of the statute of 1860, and other acts of modern legislation; especially when he is taken in marriage under the circumstances shown by the evidence in this case; where he is merely living with, and upon the former possession of, his wife. He was, doubtless, by the framers of this statute, and under the spirit of reform and progress of the day, supposed to be " a convenient thing to have in the house;" and out of regard to the notions of his usefulness in a past age, he should, even now, be properly regarded; and probably, out of respect to a suitable and proper reward for present convenience, and past usefulness, it is provided, by section 10 of the act of 1860, " that in case of the decease of the wife, leaving him surviving," he shall enjoy a life estate (dower) in one third of the real estate of which his wife died seised. But it is not necessary further to speculate about this. It is sufficient for the purpose of deciding this case, for the court to see that the evidence shows no change in the charge of the household, or in providing for the maintenance of the family of the plaintiff, by the marriage. Her testimony is, that she still provides for her minor children. This alone, in the language of the statute, entitles her to the *possession* of the cow. I know of no statute, or common law, that changes the title to this property, creates a forfeiture of this right, or that debars her of the privileges conferred by the statute, by taking to herself a husband, either as an auxiliary, or an incumbrance. Besides, I think the cow was exempt as the only cow of a householder, up to the time of her last marriage, certainly; and the defendant cannot claim that the marriage enures to his benefit, in respect to the title of this property, or changes its title.

The judgment must therefore be affirmed.

[FRANKLIN SPECIAL TERM, March 5, 1861. *Potter*, Justice.]