# Richmond.

## HUTCHINS v. HUTCHINS.

### APRIL 16, 1896.

1. DIVORCE—*Husband's rights and duties—Cruelty by member of family.*
The husband is the head of his family, and, as such, is entitled to
select the place of residence of his family, and to say of whom the
family circle shall consist. He is entitled to obedience and respect
from his wife as long as he deserves it, but he owes to her the duty
of protection from whatever danger may threaten her. If he per-
mits the inmates of his house to treat her with cruelty, the cruelty is
his, and she may leave his home without furnishing him with cause
for divorce. A long series of vexations, culminating in a charge of
larceny, and a serious assault by a person of greatly superior physi-
cal force, is cruelty within the meaning of the law.

Appeal from a decree of the Circuit Court of Warwick
county, pronounced March 23, 1894, in a suit in chancery,
wherein appellant was the complainant, and appellee was
the defendant.

*Affirmed.*

*W. J. Nelms,* for the appellant.

*M. T. Hughes,* for the appellee.

KEITH, P., delivered the opinion of the court.

Tuthill C. Hutchins, the appellant, was married in the
city of Brooklyn to Jennie Squibb in September, 1883, and
on the 2nd of February, 1892, filed a bill in the Circuit
Court of Warwick county praying for a divorce *a mensa et
thoro.*

He alleges that after their marriage they resided for a
number of years in the city of Brooklyn, and then removed

to Warwick county, Va., where he and his father purchased
a farm.   The purchase was made in the name of the father
who contributed a large share of the purchase money, but
there was an understanding that as soon as he could contri-
bute one-half of the purchase price, a half-interest would be
conveyed to him.   The farm contained 152 acres, and had
upon it a good dwelling house and out-houses.   In accord-
ance with this arrangement, appellant, his wife, two children,
and his father and mother moved into the farm-house.   The
appellant continued to work in New York where he could
earn good wages, and this separation soon became a cause
of complaint on the part of the appellee.   She grew dis-
contented with life on a farm, and in the same house with
the father and mother of appellant, and urged him to build
a separate home for her, which it seems appellant felt unable
to do, and so informed her, insisting that the home in which
they lived was owned jointly by his father and himself, and
was comfortable and commodious, and he therefore besought
her to be contented until he was in a financial condition that
would enable him to gratify her.   She grew, however, more
and more discontented, and finally declared her intention of
deserting him, which she shortly thereafter did by removing
to the State of New Jersey, where she is now living with her
friends.   These are the principal allegations of the bill,
which concludes with the prayer that she may be required
to answer it under oath; that a divorce *a mensa et thoro* may
be granted; and that appellant may have the custody of the
children.

To this bill Mrs. Hutchins filed her answer under oath, in
which she avers, that from the time of their marriage in
1885, until she came to Virginia in 1888, she and her hus-
band lived together quietly and happily; that until Decem-
ber, 1891, she lived in the house with her husband's parents,
and that it is true she became discontented, because her
mother-in-law was abusive and cruel, and frequently as-

saulted her so that she required the assistance of neighbors to dress her wounds; that she informed her husband that unless he could provide a home for her she would be compelled to resort to her friends for protection; that she besought him to give her a home, if only a log cabin, that she might get rid of the wretched life she was then living. He, however, afforded her no relief, and she then informed him that she could endure no longer the cruelty to which she had been subjected, and she thereupon returned to her friends. She declares her affection for her husband, denies an intention to desert him, and avers her willingness to return whenever he will give her a home, and protection against insult and cruelty.

Depositions were taken on both sides, from which it appears that the appellee led anything but a happy life with her mother-in-law, who seems to be an overbearing, quarrelsome, dictatorial woman, and so little accustomed to restrain and control her tongue and temper, that she on one occasion, in the presence of others, accused her daughter of stealing, and this charge being denied, mutual recriminations followed which finally resulted in a serious assault by her upon the appellee. On this occasion the appellee's head was cut so that her hair was matted with blood which ran upon her clothes and upon the floor. This occurred on Thanksgiving day, when the presence of invited guests, who came upon the scene before the evidences of the assault had been removed, and who washed and dressed the wound, made the situation all the more mortifying, and this it was which brought affairs to a crisis.

Looking to the statements of the bill and answer, and to these undisputed facts, we think the appellee is well warranted in charging that she has been cruelly treated. We are, of course, aware that it is the right of the husband to select the place at which his family shall live, and to say of whom the family circle shall consist. Notwithstand-

ing the changes that have so greatly altered and ameliorated the position of the wife before the law, it still remains that the husband is the head of the family and that as such he should be obeyed and respected as long as he deserves respect and obedience.   But this position of dignity in the family carries with it correlative obligations.  He owes to his wife the duty of protection from whatever danger may threaten her, and to permit her to suffer cruelty and wrong at the hands of another, even though that other be his father or his mother, is as great a breach of duty as though they proceeded directly from him.

It is unnecessary to cite authorities to show that the facts of this case establish cruelty.   They come within the most restricted definition of cruelty.   A long series of vexations, culminating in a charge of larceny and in a very serious assault committed by a person greatly her physical superior, is such cruelty as is contemplated by our statute of divorce.  There can be no doubt that the appellant is responsible for the acts of his mother.   " On the principle that one is responsible for what he permits,   *   *   *   if a husband, in spite of his wife's remonstrance, keeps in his house persons who by their treatment put her in peril, it is cruelty for which she may have a divorce."   See Bishop on Marriage and Divorce, (Ed. 1891) sec. 1587; *Hall* v. *Hall,* 9 Oregon, 452.

Appellant seems to rely upon the case of *Harris* v. *Harris,* 31 Gratt. 13.   It would have borne a strong resemblance to this had the answer in that case been responsive to the bill, or had the averments of facts in the answer been sustained by the evidence.   On page 25, the learned and accurate judge who delivered the opinion, says the " specific statements of the reasons for the appellee leaving her home and her husband, which are given as a justification or excuse for her conduct, are affirmative, and can be of no avail as defence without proof in support of them.   I have looked

most carefully through the record to see if there was any such proof, and there is absolutely none."

In this case the bill is quite full and precise in its allegations, and demands an answer under oath, and the answer is direct and positive in its statements. It is in many material respects directly responsive to the allegations of the bill, and is strongly corroborated and supported by the evidence. A man who marries a woman, and then sends her to live among strangers, in a family where she was the recipient of such treatment as is disclosed in this record, is in our judgment guilty of such cruelty as fully to justify her in seeking the protection of her friends, and we are therefore of opinion that the decree of the Circuit Court which dismissed his bill is right, and must be affirmed.

*Affirmed.*