### RICHARDSON v. WOODWARD et al.

(Circuit Court of Appeals, Fourth Circuit. November 8, 1900.)

No. 349.

1. BANKRUPTCY—EXEMPTIONS—CONSTRUCTION OF STATUTES.

Courts of bankruptcy, in determining the claims of bankrupts to exemptions under state laws, will follow the construction placed upon such laws by the highest court of the state, so far as they have received a construction, and beyond that will apply to them the general, established rules of construction.

2. SAME—HOMESTEAD EXEMPTIONS—MARRIED WOMEN.

Under Const. Va. art. 11, which secures to "every householder or head of a family" a homestead exemption not exceeding in value $2,000, and provides that it shall be "liberally construed to the end that all the intents thereof may be fully and perfectly carried out," a married woman who holds the title to the property, although living with her husband, is entitled to claim the exemption, as against her own creditors, where she has been trading as a feme sole. She is the head of a family, either alone or jointly with her husband, for homestead purposes.

Petition for Revision of Proceedings of the District Court of the United States for the Eastern District of Virginia, in Bankruptcy.

Mrs. Marian H. Richardson, a married woman, conducted a mercantile business at Plumpoint under the style of J. L. Richardson, Agent. J. L. Richardson, the agent, was her husband. The family consisted of the husband, the wife, and a daughter 13 years old, all of whom resided in a house owned by the wife. Mrs. Richardson was the postmistress at Plumpoint, and the post office was kept in the store, and managed by the husband, who conducted the business. Previous to entering into this business J. L. Richardson was a clerk for R. E. Richardson, and Mrs. Richardson boarded her husband and the other clerks of R. E. Richardson. Just when J. L. Richardson ceased to clerk for R. E. Richardson, and opened business in his wife's name, does not appear; but about the 10th of May, 1898, Mrs. Marian H. Richardson made an assignment for the benefit of her creditors, and closed the business. She and her husband were both out of business from this time until about September, 1898, when J. L. Richardson again commenced business in the same house as agent for T. J. Richardson, his brother. During all the time he was conducting the business for his wife, while he was out of business, and also while conducting business for T. J. Richardson, J. L. Richardson carried passengers back and forth from Plumpoint to the station, and money made from this and other sources was used to aid his wife in supporting his family. The goods conveyed in the assignment did not pay off the creditors of J. L. Richardson, Agent; and on the 5th day of January, 1899, Mrs. Marian H. Richardson filed

her petition praying to be adjudged a bankrupt, and on the next day the order of adjudication was entered. Afterwards J. L. Richardson filed a petition in bankruptcy, and claimed all his property under what is known in Virginia as the "Poor Debtors' Law" (section 3650 et seq., Code Va.), which exempts certain chattels to "a householder or head of a family." Marian H. Richardson filed an amended petition, and claimed her real property under what is known as the "Homestead Exemption Law," which exempts to a householder or head of a family $2,000, free from levy, garnishment, or distress. The title to the real estate is in the wife, Marian H. Richardson; and the husband testified that the wife managed the business of the family, and had always been regarded as the head of the family since their marriage, and he was an assistant or helpmate in getting along; that she was postmistress, took boarders, sewed, and was a dressmaker. The petitioner, on examination, testified that she was a householder and head of a family, and she supported the family by the income from the store conducted by her husband as her agent, and other sources.

R. T. Lacy and John A. Lamb, for petitioner.

Isaac Diggs, for respondents.

Before GOFF and SIMONTON, Circuit Judges, and PURNELL, District Judge.

PURNELL, District Judge (after stating the facts as above). The only question presented and argued is whether, being a married woman living with her husband, petitioner is entitled to the homestead exemption as "a householder or head of a family" as provided by the constitution and laws of Virginia. No question of procedure is involved,—as to whether the bankrupt had properly set up a claim for the exemption. Section 6 of the bankruptcy act, approved July 1, 1898, provides:

"This act shall not affect the allowance to bankrupts of the exemptions which are prescribed by the state laws in force at the time of the filing of the petition in the state wherein they have had their domicile for the six months, or the greater portion thereof, immediately preceding the filing of the petition."

The intention was to adopt the state laws governing exemptions. Hence the courts of bankruptcy will look to, and be governed by, the constitutions, statutes, and decisions of the several states and territories, in deciding who is entitled to exemptions, and the amount and species of property to be exempt. A bankrupt is entitled to the same exemptions as if proceeded against as a debtor under the state law, and none other. "Shall not affect" means shall not enlarge or diminish. In determining these exemptions the bankrupt courts will follow the construction given the state laws by the highest courts of the state the statute of which is involved. The decisions to this effect are numerous and uniform. But where there is no construction of a state law by the state courts, or there is a conflict of construction, and a proper case is presented, involving a construction of state constitutions or statutes, the court of bankruptcy will, as other courts of the United States do, give it a construction to carry out the purport and intent of the act of congress; and section 2, subd. 11, provides that the courts of bankruptcy shall determine all the claims of bankrupts to their exemptions. Otherwise, they will follow the interpretation of the

state courts. Marly v. Railroad Co., 146 U. S. 162, 13 Sup. Ct. 54, 36 L. Ed. 925; Provident Sav. Inst. v. Massachusetts, 6 Wall. 630, 18 L. Ed. 907; Randall v. Bingham, 7 Wall. 541, 19 L. Ed. 285. It appears, was admitted in the argument, and is stated by the district judge, that the courts of Virginia have not considered or decided the question involved in the case at bar. These courts have construed the constitution and statutes referred to, but not as bearing upon or involved in this question of homestead exemptions. Had they done so, this court would follow their interpretation. In the absence of such decisions, this court must determine the claim of the bankrupt to exemptions, not upon any supposition of how the state courts would probably decide, but according to established rules of construction. The husband does not claim the homestead exemption. The poor debtor's exemption of specific articles of personal property, which he has claimed, is provided for in a different statute, and can in no way affect a decision of the question under consideration. That is a personal property exemption, personal to the debtor. It is founded on a different policy.

The general rule is that exemption laws should be liberally construed. The constitution of Virginia (article 11, § 7) emphasizes the rule, and makes it more specific, by providing, "The provisions of this article shall be construed liberally to the end that all the intents thereof may be fully and perfectly carried out." What was the legislative intent in the adoption of article 11 of the constitution of Virginia, and the acts of assembly in pursuance thereof? "All the intents" to be fully and perfectly carried out? Homestead laws are enacted as a matter of public policy, in the interest of humanity,—that, though a citizen may be overtaken by reverses of fortune, he and those of his household shall not be homeless, without shelter, raiment, and food. The debtors' prison and attendant evils meet with little favor in modern legislation. The policy of the law is that families shall not be deprived of shelter and reasonable comforts. The state is concerned that the citizen shall not be devested of the means of support and reduced to pauperism. Thomp. Homest. & Ex. p. 1; Wap. Homest. pp. 3, 4, and cases cited. The exemption is intended for the family. The decisions in Virginia do not controvert or differ from all the other authorities on this point; for Judge Staples, in delivering the opinion of the court in Shipe v. Repass, 28 Grat. 716, says:

"No one can look into the provisions of our constitution and the adjudicated cases of other states, and fail to see that the primary object is to provide for the family."

This policy is well stated in Wap. Homest. p. 4:

"The conservation of family homes is the purpose of homestead legislation. The policy of the state is to foster family homes, as the factors of society, and thus promote the general good. To save them from disintegration and secure their permanency, the legislator seeks to protect their homes from forced sales, so far as it can be done without injustice to others. * * * Families are the units of society, indispensable factors of civilization, the basis of the commonwealth. Upon their permanency in any community depends the success of schools, churches, public libraries, and good institutions of every kind. The sentiment of patriotism and independence, the spirit of free citizenship,

the feeling of interest in public affairs, are cultivated and fostered more readily when the citizen lives permanently in his own castle, with a sense of its protection and durability."

The reverse effect would be produced by a sale of the homestead and destruction of home ties. Founded, therefore, on sound public policy, the homestead is intended for the family. It is not a "poor law."

Article 11 of the constitution of Virginia secures, in addition to the articles now exempt, etc. (those claimed by the husband), to "every householder or head of a family" an exemption not exceeding in value $2,000, to be selected by him. The personal pronoun "him" has no bearing, as it may be construed "her"; for section 5, subd. 13, Code Va., provides that "a word importing the masculine gender only, may extend to and be applied to females as well as males." Petitioner is a householder, for the title is in her; and the words "or head of a family" seem to be qualifying words, for it is conceded that an unmarried man could not, under this provision, claim the exemption, nor could one not a householder do so. The provision might, therefore, be read "every householder who is the head of a family," which, in the light of the decisions, seems to be a proper paraphrase of the language. The husband could not claim the exemption. The title is in the wife, and he is not the householder. If, then, the wife cannot claim it, the primary object of the constitution, as stated by Judge Staples,—to secure a homestead for the family,—is defeated, and the provision of section 7, art. 11, of the constitution is inoperative. The article is not "liberally construed to the end that all the intents thereof may be fully and perfectly carried out."

The husband is generally and for many purposes the head of the family. He owes it as a moral duty to support his wife and children. A failure to do so is in many jurisdictions made a crime. He may say where they shall reside, but the home provided must be suitable, or the wife would be justified in leaving him,—if the place is not suitable. Hutchins v. Hutchins, 93 Va. 71, 24 S. E. 903. This was a divorce case, and in no way involved the question of homestead. The records of the courts show that husbands do not always discharge this and many other duties incumbent upon them. When he fails in these moral and legal obligations; when an intelligent, active, industrious, frugal woman finds she has married a man who, instead of coming up to the standard of husband, is a mere dependent, who acknowledges that he is only a helpmate to his wife, obeys her instructions, pours his little earnings into her lap, acknowledges her to be and to have always been the head of the family, and leaves to her its support,—it would be contradictory of fact and an absurd construction of law to say he, and not she, is the head of the family, and deny to her the benefits intended for the family out of her separate estate, property she has accumulated, because the title is in her and she lives with her husband. This would seem to defeat instead of construing the law "to the end that all the intents thereof may be fully and perfectly carried out." While there are no decisions on the question under con-

sideration, an authority on state law, whose opinion is entitled to great respect, not only within but beyond the limits of the state, in discussing this question, says:

"A married woman with separate property and a family may, it seems, claim the privilege of homestead; but she and her husband can have but one exemption between them." 4 Minor, Inst. pt. 1, p. 1007.

And for this Thomp. Homest. & Ex. § 64, pp. 220-226, and cases cited, are quoted as authority. To the same effect is Wap. Homest. p. 63. This last authority says:

"The law recognizes husband and wife as the united head of their family for homestead purposes. It allows either to own the property upon which the homestead privilege of both is based. It allows either to claim the benefit when the other does not."

Under the Code of Virginia many of the disabilities of a married woman have been removed by statute, and she is entitled "to hold, control and use her separate estate as if she were sole, and by her own act encumber, convey, devise, bequeath or otherwise dispose of it in the same manner and with like effect as if she were unmarried." Code, c. 103. "She may engage in trade and carry on business for her separate use and benefit the same as though she were unmarried. She may make contracts as if sole, in respect to such trades, business, labor, services and her said estate or upon the faith and credit thereof. * * *" Section 2288. And she may sue and be sued as though she were unmarried. Section 2289. In short, she has been liberated from many of the restrictions and disabilities of the common law, and placed upon a higher plane in the eye of the law. In many of the states having laws similar to the Virginia constitution, where the question has been decided, where the married women owned the fee and were the debtors, they have been allowed to claim the homestead exemptions; and in those states the rights of married women were not as liberal as under the statutes above cited. Partee v. Stewart, 50 Miss. 720; Brigham v. Bush, 33 Barb. 596; McPhee v. O'Rouke, 10 Colo. 301, 15 Pac. 420; Crane v. Waggoner, 33 Ind. 83; Wilson v. Cochran, 31 Tex. 680; Orr v. Shraft, 22 Mich. 260; Thomp. Homest. & Ex. pp. 220-224; Wap. Homest. pp. 64-66. The wife may represent the united head of the family in applying for homestead, upon the husband's request, or upon his neglect to apply in behalf of the family. Wap. Homest. p. 64, citing Bowen v. Bowen, 55 Ga. 182; Cheney v. Rodgers, 54 Ga. 168; Smith v. Ezell, 51 Ga. 570; Page v. Page, 50 Ga. 597; Larence v. Evans, 50 Ga. 216; Connally v. Hardwick, 61 Ga. 501; Farley v. Hopkins, 79 Cal. 203, 21 Pac. 737. If the wife owns the fee, she is the proper person to have it made the family reservation or exempt home. She has thus the dedication of her own separate property. Wap. Homest. p. 64.

The case of Partee v. Stewart, cited, resembles the case at bar. The words used in the Mississippi statute are, "The head of every family, being a white person and a house-keeper." On page 721 of that case, Judge Simrall, in delivering the opinion of the court, used the following language:

"She was the exclusive owner. The marital rights of the husband did not extend to the income, rents, and profits. She could lease without the concurrence of her husband, and could 'put the lessee in possession of the premises, including the buildings. Having this large control over the property, she was certainly within the reason of the statute, and we think within its words. The debtor must both own and reside upon the land,—must be a householder and have a family. Under that policy which secures to the wife all the property owned by her at the time of the marriage, and all subsequent acquisitions, there must be a multitude of instances where all the means for the support of the family are exclusively hers; and the argument is just as strong to protect her homestead from seizure and sale as where the property belongs to the husband, and he is the debtor."

Brigham v. Bush, cited, is parallel to the case at bar. The New York statute provides that certain property "when owned by a person being a householder shall be exempt." The court held that Mrs. Brigham, although married, was entitled to hold a part of her separate estate as exempt under the New York statute.

McPhee v. O'Rouke is in point. The Colorado statute provides that "every householder in the state of Colorado, being the head of the family, shall be entitled to a homestead not exceeding in value the sum of two thousand dollars," etc. The court held that a married woman owning separate estate was entitled to the benefit of the act.

Crane v. Waggoner, referred to above, is similar to the case at bar. Section 1 of the homestead laws of Indiana provides "that an amount of property not exceeding in value three hundred dollars owned by any resident householder; shall not be liable to sale or execution or any other final process from a court," etc. A judgment was obtained against the wife, and levied upon the property which formed a part of her separate estate. The wife was residing with her husband, and claimed the property levied upon as exempt to her as a homestead. The court held that the wife was entitled to hold the property levied upon as exempt, and that, her property being less than $300 in value, the wife and husband had the right to claim a joint homestead. Judge Ray, in delivering the opinion of the court, used the following language:

"The language of the law must therefore be construed with regard to the declared objects and purpose to be accomplished, and effect given, so far as reasonably can be, to the constitutional declaration. The plain intent is to preserve a home or support for the family, and not for its head, as distinguished from its members. Where, therefore, the husband and wife are living together, and the property of the husband does not reach the limit fixed by law, and the wife is the owner of the property levied upon, and yet claimed as exempt, and is herself the real debtor in the judgment and execution, we must regard her claim to exemption as valid, to the extent necessary to make, with her husband's property, the amount protected by the statutes."

While denominating the husband as the head of the family, this joint head of the family, for the purpose of homestead exemptions, is recognized in South Carolina, in the constitution, statutes, and the decisions. Const. S. C. Amend. 2, § 32; Rev. St. S. C. 2132; In re McCutchen (D. C.) 4 Am. Bankr. R. 81, 100 Fed. 779.

Under the rule of construction in the constitution, for the reasons given, under the circumstances of the case, the conclusion is that there is error. The wife, living with her husband, having a separate

estate, and being the debtor, may be the head of the family, or there may be a joint head of the family, for homestead purposes. Certainly there are decisions which might tend to a different conclusion, but the weight of authority is to the effect that where the wife is the owner of the property, where she trades as a feme sole, and is the debtor, and the husband cannot and does not claim the homestead exemption, the wife, though living with her husband, may be alone, or jointly with him, the head of the family, and as such claim the homestead exemption. Under the circumstances of the case at bar, the petitioner, a married woman living with her husband, is entitled to the homestead exemption, and there was error in refusing to allow such claim. The decree of the district court is reversed, and the cause remanded, that the claim for homestead exemption by the bankrupt be allowed. Reversed.